No. 08-214C
(Judge Bruggink)

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

F & F SUPPLY, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S MOTION TO DISMISS,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

REGINALD T. BLADES, JR.
Assistant Director

TARA J. KILFOYLE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530
Tele: (202) 305-1709
Fax: (202) 514-8624

OF COUNSEL:
Major Toshene Fletcher
Litigation Attorney
Litigation Division
General Litigation Branch
United States Army

August 21, 2008

Attorneys for Respondent

## TABLE OF CONTENTS

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF THE ISSUES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Nature Of The Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. Statement Of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A. Oliver Moore's Criminal Indictment And Plea. . . . . . . . . . . . . . . . . . . . . . 4

B. The Orders For Supplies Or Services. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

1. The First Order For Supplies Or Services. . . . . . . . . . . . . . . . . . . . 7

2. The Second Order For Supplies Or Services. . . . . . . . . . . . . . . . . . . 8

C. Documents And Correspondence Relating To The Eyewear.. . . . . . . . . . . 10

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I. This Court Lacks Subject Matter Jurisdiction Over F&F's Breach of Contract Claims Because F&F Failed To Submit A Certified Contract Disputes Act Claim To An Army Contracting Officer Prior To Filing A Complaint In This Court. . . 11

A. Applicable Standards. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

B. The Alleged Express Or Implied-In-Fact Contract Would Be Subject To The Contract Disputes Act.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

C. F & F Has Failed To Satisfy The Jurisdictional Prerequisites Of The Contract Disputes Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

II. F & F's Implied In Fact Contract Claim Should Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted. . . . . . . . . . . . . . . . . . . . . 16

A. Applicable Standards. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

B. F & F Has Not Identified Any Government Employee That It Alleges Had The Authority To Bind The United States In Contract, Or The Source Of Any Alleged Authority To Enter Into Contracts On Behalf Of The United States. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

C. F & F Has Not Sufficiently Alleged That Any Government Official With Authority Ratified An Implied-In Fact Contract With F & F. . . . . . . . . . . 18

III. F & F's Express Contract Claim Should Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted Because F & F Has Failed To Identify Any Source Of Mr. Moore's Alleged Authority To Enter Into Contracts On Behalf Of The United States. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IV. F & F's Takings Claim Should Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

A. F & F Has Failed To Allege Any Congressional Authority For The United States To Take The Eyewear For Public Use.. . . . . . . . . . . . . . . . . . . . . . 21

B. F & F Has Alleged That The Government Acted In Its Proprietary, As Opposed To Sovereign, Capacity.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

B. F & F Has Alleged That A Taking Resulted From Criminal And Unauthorized Conduct. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## TABLE OF AUTHORITIES

### CASES

A-1 Cigarette Vending, Inc. v. United States,
49 Fed. Cl. 345 (2001). .......... 21

Ace Constructors, Inc. v. United States,
70 Fed. Cl. 253 (2006). .......... 14

Aetna Cas. & Sur. Co. v. United States,
28 Ct. Cl. 146(1981). .......... 12

Alaska Airlines, Inc. v. Johnson,
8 F.3d 791 (Fed. Cir. 1993). .......... 22

Arakaki v. United States,
62 Fed. Cl. 244 (2004). .......... 26

Arakaki v. United States,
71 Fed. Cl. 509 (2006). .......... 19

Arbitraje Casa De Cambio, S.A. v. United States,
79 Fed. Cl. 235 (2007). .......... 13

Bannum, Inc. v. United States,
33 Fed. Cl. 672 (1995). .......... 14

Bd. Mach., Inc. v. United States,
49 Fed. Cl. 325 (2001). .......... 21

Bell Atlantic Corp. v. Twombly,
127 S. Ct. 1955 (2007). .......... 16, 17

Berdick v. United States,
222 Ct. Cl. 94 (1979). .......... 12

California Sand & Gravel, Inc. v. United States,
22 Cl. Ct. 19, 28 (1990). .......... 19

Catellus Dev. Corp. v. United States,
31 Fed. Cl. 399 (1994). .......... 12

City Line Joint Venture v. United States,
503 F.3d 1319 (Fed. Cir. 2006)........................................................................................ 3

City of El Centro v. United States,
922 F.2d 816 (Fed. Cir. 1990)................................................................................. 17, 19

Commonwealth Edison Co. v. United States,
56 Fed. Cl. 652 (2003). ..................................................................................................... 3

D.L. Braughler Co. v. West,
127 F.3d 1476 (Fed. Cir. 1997)...................................................................................... 15

Dawco Constr., Inc. v. United States,
930 F.2d 872 (Fed. Cir. 1991)........................................................................................ 15

De Archibold v. United States,
57 Fed. Cl. 29 (2003). ..................................................................................................... 17

Del-Rio Drilling Programs v. United States,
146 F.3d 1358 (Fed. Cir. 1998)...................................................................................... 24

Deponte Investments, Inc. v. United States,
54 Fed. Cl. 112 (2002). ................................................................................................... 14

England v. Swanson Group, Inc.,
353 F.3d 1375 (Fed. Cir. 2004)...................................................................................... 14

Eubanks v. United States,
25 Ct. Cl. 131, 137 (1992). ............................................................................................. 12

Figueroa v. United States,
57 Fed. Cl. 488 (2003). ................................................................................................... 17

Fischbach and Moore Int'l Corp. v. United States,
987 F.2d 759 (Fed. Cir. 1993)........................................................................................ 15

Gary v. United States,
67 Fed. Cl. 202 (2005). ................................................................................................... 19

Godwin v. United States,
338 F.3d 1374 (Fed. Cir. 2003)...................................................................................... 16

Griffin Broadband Communs., Inc. v. United States,
79 Fed. Cl. 320 (2007). ................................................................................................... 16

Henke v. United States,
60 F.3d 795 (Fed. Cir. 1995)........................................................................................ 12

Hercules v. United States,
516 U.S. 417, 423 (1996)............................................................................................. 23

Houston v. United States,
60 Fed. Cl. 507 (2004). ................................................................................................ 13

Hughes Communications Galaxy, Inc.,
271 F.3d 1060, 1070 (Fed. Cir. 2001).......................................................................... 22

Indium Corp. of America v. Semi-Alloys, Inc.,
781 F.2d 879 (Fed. Cir. 1985)...................................................................................... 12

Int'l Data Prods. Corp. v. United States,
492 F.3d 1317 (Fed. Cir. 2007).................................................................................... 23

J & E Salvage Co. v. United States,
36 Fed. Cl. 192 (1996). ................................................................................................ 22

J & E Salvage Co. v. United States,
37 Fed. Cl. 256 (1997). ................................................................................................ 15

Kalamazoo Contrs. v. United States,
37 Fed. Cl. 362 (1997). ................................................................................................ 17

King v. United States,
81 Fed. Cl. 766 (2008). ................................................................................................ 14

Marshall N. Dana Contr., Inc. v. United States,
229 Ct. Cl. 862 (1982). ................................................................................................ 12

McAfee v. United States,
46 Fed. Cl. 428 (2000). ........................................................................................ 18, 19

McNutt v. Gen. Motors Acceptance Corp.,
298 U.S. 178 (1936)..................................................................................................... 12

Medina Constr., Ltd. v. United States,
43 Fed. Cl. 537 (1999). ................................................................................................ 15

New Era Constr. v. United States,
890 F.2d 1152 (Fed. Cir. 1989).................................................................................... 13

Nicholson v. United States,
77 Fed. Cl. 605 (2007). .......... 24

PI Elecs. Corp. v. United States,
55 Fed. Cl. 279 (2003). .......... 21, 22, 24

Perez v. United States,
156 F.3d 1366 (Fed. Cir. 1998).......... 16

Perri v. United States,
340 F.3d 1337 (Fed. Cir. 2003).......... 23

Pevar Co. v. United States,
32 Fed. Cl. 822 (1995). .......... 16

Reflectone, Inc. v. Dalton,
60 F.3d 1572 (Fed. Cir. 1995).......... 15

Reliance Ins. Co. v. United States,
931 F.2d 863 (Fed. Cir. 1991).......... 14

Renda Marine, Inc. v. United States,
65 Fed. Cl. 152 (2005). .......... 14

Scheuer v. Rhodes,
416 U.S. 232 (1974).......... 12

Shook v. United States,
26 Cl. Ct. 1477, 1488 (1992). .......... 15

Short v. United States,
50 F.3d 994 (Fed. Cir. 1995).......... 21

Singleton v. United States,
6 Ct. Cl. 156, 165 (1984). .......... 12

St. Christopher Assocs., L.P. v. United States,
511 F.3d 1376 (Fed. Cir. 2008).......... 3

Steel Co. v. Citizens for a Better Env't,
523 U.S. 83 (1998).......... 11

Stout Rd. Assocs. v. United States,
80 Fed. Cl. 754 (2004). .......... 17

Taylor v. United States,
303 F.3d 1357 (Fed. Cir. 2002)........................................................................................ 12

Trauma Service Group v. United States,
104 F.3d 1321 (Fed. Cir. 1997).......................................................................................... 3

Ulysses, Inc. v. United States,
66 Fed. Cl. 161 (2005). ..................................................................................................... 14

Witherington Constr. Corp. v. United States,
45 Fed. Cl. 208 (1999). ..................................................................................................... 14

Yancey v. United States,
915 F.2d 1534 (Fed. Cir. 1990)........................................................................................ 20

Yuba Natural Resources, Inc. v. United States,
904 F.2d 1577 (Fed. Cir. 1990)........................................................................................ 20

## STATUTES

5 U.S.C. § 102 ...................................................................................................................... 13

18 U.S.C. § 1001.................................................................................................................... 4

28 U.S.C. § 1491(a). ............................................................................................................ 13

41 U.S.C. § 601.................................................................................................................... 13

41 U.S.C. §602(a). ............................................................................................................... 13

41 U.S.C. § 605(a). .............................................................................................................. 14

41 U.S.C. § 605(c)(1)........................................................................................................... 15

## REGULATIONS

48 C.F.R. § 1.601(a)............................................................................................................ 17

48 C.F.R. § 1.602-3(c)(1)..................................................................................................... 19

48 C.F.R. § 33.201............................................................................................................... 14

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| F & F SUPPLY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08-214C |
| v. | ) | (Judge Bruggink) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss the complaint filed by plaintiff, F & F Supply, Inc. ("F & F"), for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. In support of this motion, we rely upon the amended complaint filed by F & F, the complaint filed by F & F in the United States District Court for the Middle District of Louisiana and its attachments, the following brief, and defendant's appendix filed under separate cover.

## STATEMENT OF THE ISSUES

1. Whether F & F's express and implied-in-fact contract claims should be dismissed for lack of subject matter jurisdiction because F & F has not submitted a Contract Disputes Act claim to a United States Army ("Army") contracting officer.

2. Alternatively, whether F & F's implied-in-fact contract claim should be dismissed for failure to state a claim upon which relief can be granted because F & F has failed to sufficiently allege that any government official with contracting authority entered into or ratified an implied-in-fact contract with F & F.

3. Whether F & F's takings claim should be dismissed for failure to state a claim upon

which relief can be granted because F & F has failed to allege any Congressional authorization for the Army to take F & F's eyewear for public use and because F & F has failed to allege that the United States acted in its sovereign capacity.

4. Whether upon F & F's takings claim should be dismissed for failure to state a claim upon which relief can be granted because the F & F acknowledges that the alleged taking of F & F's property is based upon criminal and unauthorized conduct.

## STATEMENT OF THE CASE

### I. Nature Of The Case

This is a matter originally brought in United States District Court for the Middle District of Louisiana, and transferred upon plaintiff's motion to the Court of Federal Claims. In the amended complaint filed in this Court, F & F alleges that the United States breached an implied-in-fact contract to purchase protective eyewear from F & F.[1] Amended Complaint ("Amend. Compl.") ¶¶ 22-27. F & F alleges that the eyewear was "provided by Plaintiff to the United States, was accepted by the United States by its authorized personnel . . . . is being used for its intended purposes," and therefore, an implied-in-fact contract exists between F & F and the United States. Amend. Compl. ¶ 23. F & F further alleges that, "[i]n material breach of the contract, the United States has retained the eyewear and has used it, but has failed to pay Plaintiff." Amend. Compl. ¶ 26.

[1] In its amended complaint, F & F alleges that the eyewear was "tactical eyewear." See Amend Compl. ¶¶ 1; 9. Defendant has reason to believe that the eyewear at issue was not "tactical eyewear." See Defendant's Appendix ("App.") at 36. However, the quality of the eyewear is not relevant to the present motion. For purposes of this motion, defendant will refer to the eyewear as "the protective eyewear" or "the eyewear."

Alternatively,[2] F & F alleges that the United States breached an express contract with F & F. Amend. Compl. ¶¶ 36-42. To support its contention that an express contract existed between F & F and the United States, F & F alleges that Oliver Moore, an employee of the 321st Theater Material Management Command ("TMMC"), Army Materials Command ("AMC"), ordered the eyewear from F & F, and in doing so, "was at all times an authorized agent of the United States acting within the normal scope of his duties." Amend. Compl. ¶ 37.

In the alternative,[3] F & F alleges that "[t]he conduct of the United States in accepting, retaining, and using the eyewear, without just compensation to Plaintiff, constitutes an unlawful taking of private property for public use in violation of the Fifth Amendment to the United States Constitution." Amend. Compl. ¶ 35.

## II. Statement Of Facts

F & F's case before this Court is related to the criminal actions of Oliver Moore, a former employee of the Department of the Army. Mr. Moore created false orders for supplies or services to purchase eyewear from F & F, and forged the signatures of other government employees upon the orders. Information on the criminal conduct relating to the eyewear is set

[2] "[A]n implied-in-fact contract cannot exist if an express contract already covers the same subject matter." Trauma Service Group v. United States, 104 F.3d 1321, 1326 (Fed. Cir. 1997). Therefore, F & F cannot have both an express contract and an implied-in-fact contract with the United States.

[3] Takings claims generally do not arise under a government contract because the Government is acting in its proprietary rather than its sovereign capacity, and because remedies are provided by the contract. St. Christopher Assocs., L.P. v. United States, 511 F.3d 1376, 1385 (Fed. Cir. 2008). Therefore, if F & F could establish the existence of a contract between F & F and the United States, F & F would have a breach of contract claim, not a takings claim. See City Line Joint Venture v. United States, 503 F.3d 1319, 1323-24 (Fed. Cir. 2006); Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652, 656 (2003).

forth below to provide the Court with background information necessary to understand the present case.

**A. Oliver Moore's Criminal Indictment And Plea**

Oliver Moore was a civilian employee of the Department of the Army assigned as an Integration Systems Analyst to the 321st TMMC, AMC, in Baton Rouge, Louisiana. App. 17; 38. Mr. Moore was not a contracting officer, and did not have the authority to enter into contracts on behalf of the United States. App. 18; 38.

On October 17, 2001, a Federal Grand jury in the Middle District of Louisiana returned an indictment charging Mr. Moore with two counts of knowingly and willfully making false statements, in violation of 18 U.S.C. § 1001, in addition to several other counts.[4] App. 9-13. The first count of the indictment charged Mr. Moore with the following:

> In or about May 2005, in the Middle District of Louisiana, in a matter within the Jurisdiction of the United States Army, part of the executive branch of the Government of the United States, OLIVER MOORE III, knowingly and willfully did make materially false statements and representations, in that he (1) forged the signature of a contracting and ordering officer of the United States Army and back-dated an order for supplies and services form to February 28, 2005, to purchase 40,000 pairs of "tactical safety eyewear" from F & F at a cost of $378,000, (2) fraudulently indicated that the Order had been issued by the General Services Administration, and (3) issued a false contract number, knowing in fact that the Army had not so ordered the glasses, but that he had done so in order to enrich his friend, MF,[5] and others at F & F.

---

[4] Mr. Moore did not plead guilty to any of the other counts, and United States Attorney agreed that in exchange for Mr. Moore's guilty plea to the counts of knowingly and willfully making false statements, the United States would move to dismiss the other counts. See App. 14.

[5] "MF" refers to Michael ("Mike") Ferdinand. Mr. Ferdinand was identified by his initials, as opposed to his full name, because the United States did not charge Mr. Ferdinand with

App. 11. The third count of the indictment charged Mr. Moore with the following:

> On or about September 15, 2005, in the Middle District of Louisiana, in a matter within the jurisdiction of the United States Army, part of the executive branch of the Government of the United States, OLIVER MOORE III, knowingly and willfully did make materially false statements and representations in that he (1) created a second Order for Supplies or Services for the 40,000 pairs of tactical eyewear purchased from F & F referenced in Count 1, (2) forged the signature of a contracting and ordering officer of the United States Army, (3) forged the signature of the authorized government representative, indicating the eyewear had been received, and (4) listed a false contracting number, knowing, in fact, that the Army had not ordered the glasses, but that he had done so to enrich his friend, MF, and others at F & F.

App.11-12.

On January 16, 2008, Mr. Moore plead guilty to the first and third counts of the indictment before the United States District Court for the Middle District of Louisiana. App. 14-20. In the plea agreement, Mr. Moore and the United States stipulated to the following facts regarding the eyewear:

> When supplies were needed for United States Army soldiers serving in the Middle East, one procedure for securing such materials was a procurement request to be sent via the Army's Corps Theater Automated Service Center. Such a request could generate a purchase order in the Standard Army Retail Supply System and would require funding from an authorized approving official. Normally, a bidding process was utilized to ensure the Army received quality products at the best price.
>
> The procurement process was monitored by contracting officers, authorized to approve purchases for the Army. Defendant Moore did not have authority to make such purchases of supplies on behalf of the Army.

---

a crime.

> LL[6] was the owner of Security Safety & Supply, Inc. (S & S), a retail company engaged in providing safety and security equipment, including the resale of safety eyeglasses it purchased from another supplier, Aearo Company. LL was also the minority owner of F&F Safety and Supply Company (F & F).
>
> MF was the primary owner of F&F, also a retail company engaged in providing safety and security equipment. MF was a friend of defendant Moore.
>
> On or about April 29, 2005, Aearo Company billed S & S $135,000 for 40,000 pairs of eyeglasses, which were to have been shipped overseas through an Army depot in Pennsylvania.
>
> Fidelity Bank was a financial institution in Baton Rouge, the deposits of which were insured by the Federal Deposit Insurance Corporation. Fidelity Bank had extended a $1,000,000 line of credit to S & S in August 2003, which was increased to $1,300,000 on or about June 30, 2005. The increase was based, in part, upon a change in the terms of the agreement of indebtedness of S & S to Fidelity Bank, whereby the bank became further secured by a pledge of all accounts receivable of F & F. For its loan to S & S, the effect of the change in terms was to grant Fidelity Bank a pledge, claim, and secured interest to any accounts receivable which F&F might obtain from any source, including the Army.
>
> At an exact date unknown to the grand jury, but between February and September 2005, despite no official Army authorization or requisition from either S & S or F & F, approximately 40,000 pairs of safety eyeglasses, manufactured by Aearo Company and purchased by S & S, were shipped from Aearo Company through the Army's Susquehanna Defense Distribution Depot in New Cumberland, Pennsylvania, to Kuwait City, Kuwait, and were ultimately dispersed to Army soldiers serving in Iraq.

App. 17-18.

Mr. Moore and the United States also stipulated that Mr. Moore committed the specific

---

[6] "LL" refers to Leonard Lungaro, the owner of Security & Safety Supply, Inc. ("S & S"). Mr. Lungaro was identified by his initials, as opposed to his full name, because the United States did not charge Mr. Lungaro with a crime.

acts alleged in the first and third counts of the indictment. App. 18-19. Mr. Moore and the United States further stipulated that:

> On or about October 5, 2005, Oliver Moore, III, made a false statement for the purpose of influencing the action of Fidelity Bank in connection with a line of credit extension loan to S & S, in that he sent a copy of an e-mail message, sent from an Army finance clerk to him, to a vice president of Fidelity Bank, which message indicated that payment on the contract for the eyeglasses would be forthcoming, but which e-mail message was falsified by including a copy of an earlier e-mail message he purportedly sent to the finance clerk, which message purported to have included a copy of the forged contract . . . . In truth and fact, Moore knew he had not sent such message or copy of the contract to the finance clerk. The copy of the e-mail message Moore gave the vice president and other officers at Fidelity Bank thereby gave them a false sense of security regarding the bank's loan to S & S and contributed to the bank's decision not to take any adverse action on he loan because of the anticipated revenue to be generated by F & F's receipt of the contract payment, which revenue was pledged to the bank.

App. 19.

The district court accepted Mr. Moore's guilty plea on January 16, 2008. App. 21-22. Mr. Moore has been released on bond, and is currently awaiting sentencing. App. 22.

## B. The Orders For Supplies Or Services

### 1. The First Order For Supplies Or Services

Mike Ferdinand, an owner of F & F, signed an Order for Supplies or Services on behalf of F & F ( the "first order") for 20,000 units of "Clear Tactical Safety Eyewear" and 20,000 units of "Bronze Tactical Safety Eyewear." App. 1. Mr. Ferdinand indicated that he signed the first order on February 28, 2005. Id. "F & F/Security Safety Supply," is the contractor name listed upon the first order, and the contractor address is listed as "1785 Commercial Drive, Port Allen, La. 70767." App. 1. The first order stated that F & F was to be paid $378,000 for the eyewear.

Id.

The first order stated that it was for delivery order number "DABC-03-05-2005A". Id. The Requisition/Purchase Request number is identified as "50420001." App. 1. However, the block for the contract or purchase order number was left blank. Id. The first order stated that it was issued on February 27, 2005, by the purchasing and contracting office of the General Services Administration in Fort Worth, Texas. App. 1. However, it indicated that payment was to be made by the "Defense Finance and Accounting Office" in Indianapolis, Indiana. Id.

It stated that delivery of the eyewear was to be made one day after the issue date (i.e., February 28, 2005) to:

> SR HQ HHC ARCENT
> OEF
> Camp Arifjan
> Kuwait, KU

Id.

The first order stated that it was signed by "Maxine M. Moore" as a contracting/ordering officer on behalf of the United States. App. 1. However, Ms. Moore did not sign the first order. App. 48. In addition, Ms. Moore is not a warranted contracting officer. Id.

**2. The Second Order For Supplies Or Services**

A second order for supplies and services (the "second order") for 40,000 units of "Eyewear Tactical Clear," was also signed by Mr. Ferdinand on behalf of F & F. App. 2. Mr. Ferdinand did not indicate the date that he signed the second order. Id. "F & F Supply, Inc.," is the contractor name listed upon the second order, and the contractor address is again listed as "1785 Commercial Drive, PO Box 606, Port Allen, IA, 70767." App. 2. The second order stated

that F & F was to be paid $358,000 for the eyewear.[7] Id.

The second order stated that it was made under contract number "DAKF55-05-S-0050," and was delivery order number "0001". App. 2. The Requisition/Purchase Request number is identified as "W91PFK50420001." Id. It states that the date of the second order was "5042."[8] Id. The second order stated that it was issued by:

> SR HQ HHC ARCENT
> OEF
> Camp Arifjan
> Kuwait, KU

Id. It also stated that the eyewear was to be delivered to "SR HQ HHC ARCENT" by "0505." Id. The second order also stated that the "Defense Finance and Accounting Office" in Indianapolis, Indiana would make payment to F & F. Id.

The second order stated that it was signed by Chief Warrant Officer Two ("CW2") Rachel Ford as a contracting/ordering officer on behalf of the United States. App. 2. CW2 Ford's first name is misspelled as "Rachael." Id. CW2 Ford did not sign the second order for supplies and services. App. 50. In addition, CW2 Ford is not a warranted contracting officer. App. 51.

The second order also indicated that the eyewear was received by Sergeant First Class ("SFC") Jason Fabre on September 15, 2005. App. 2. On September 15, 2005, Jason Fabre was not a SFC, but instead, was a Master Sergeant ("MSG"). App. 37. MSG Fabre did not sign the

---

[7] In its amended complaint, F & F alleges that it is owed $378,000 under either an implied-in-fact or express contract. See Amended Compl. ¶¶ 27; 41. Defendant does not know why F & F claims that the first order for $378,000, rather than the second order for $358,000, forms the basis of either the implied-in-fact or express contract.

[8] Defendant is uncertain what these numbers are intended to indicate.

second order. App. 36. In addition, MSG Fabre was not a contracting officer. App. 37.

### C. Documents And Correspondence Relating to The Eyewear

On or about April 29, 2005, Aearo Company ("Aearo") billed S & S $135,000 for 40,000 pairs of protective eyewear. App. 4. The invoice from Aearo stated that the protective eyewear was to be shipped to an Army depot in New Cumberland, Pennsylvania. Id.; Amend. Compl. ¶ 13.

On or about May 13, 2005, Estes Express Lines ("Estes") delivered a shipment to an Army depot in New Cumberland, Pennsylvania, on behalf of Aearo. App. 5-6. The delivery slip from Estes stated that the shipment contained "STC Safety Equipment." App. 5. The delivery slip also stated that the delivery had shipped on April 29, 2005. Id. On or about July 1, 2005, S & S paid Aearo Company $135,000 by check number 051077, issued from Fidelity Bank and Trust. App. 7.

On or about April 29, 2005, F & F submitted invoice number 006648 for $378,000 to the Defense Finance and Accounting Service ("DFAS") in Indianapolis, Indiana. App. 30; Amend. Compl. ¶ 8. The invoice stated that it was for 20,000 pairs of "Eyewear Tactical Clear" and 20,000 pairs of "Eyewear Tactical Bronze." App. 30. As of April 29, 2005, Aearo had not delivered the eyewear to the Army depot in Pennsylvania. App. 5-6.

On or about March 30, 2005, Mr. Moore had forwarded Mr. Lungaro an e-mail that was supposedly from Ms. Moore. App. 3. The e-mail stated:

> Request that the vendor F & F SAFETY SUPPLY CO INC. be paid in full for all goods and services provided to the U.S. Army under Purchase Order # 50420001. The vendor is ready for shipment to POE immediately. Shipment to POE has been delayed for 10 days because of customs problems in Kuwait, at no fault of

> the vendor. POC for this action is Mr. Oliver Moore III, Army Materi[a]l Command Representative . . . .

Id. However, as of March 30, 2005, Aearo had not shipped the eyewear. App. 5-6. In addition, Aearo was to deliver the shipment to the Army depot in Pennsylvania, not to Kuwait. App. 4-6.

On or about October 5, 2005, Mr. Moore forwarded an e-mail to Mr. Lungaro and an individual at Fidelity Bank with the e-mail address "fcorey@fidelitybankbr.com." App. 8. Mr. Moore's e-mail purported to forward an e-mail that Mr. Moore had received from "Rachel.Ebanks@dfas.mil," and another e-mail, purportedly from Mr. Moore to Ms. Ebanks. Id. The e-mail from Ms. Ebanks stated that "the contract will be paid by St. Louis." Id. In his plea before the district court, Mr. Moore stipulated that he forged the attached e-mails. App. 19.

## ARGUMENT

### I. This Court Lacks Subject Matter Jurisdiction Over F&F's Breach of Contract Claims Because F&F Failed To Submit A Certified Contract Disputes Act Claim To An Army Contracting Officer Prior To Filing A Complaint In This Court

F & F alleges that the United States entered into either an express or implied-in-fact contract to purchase the eyewear from F & F. See Amend. Compl. ¶¶ 22-26; 36-41. Assuming arguendo that a contract exists between the United States and F & F, any claims arising from such a contract would be subject to the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. §§ 601 et seq. F & F has not complied with the jurisdictional prerequisites of the CDA, and therefore, this Court lacks subject matter jurisdiction over F & F's breach of contract claims.

#### A. Applicable Standards

"Subject matter jurisdiction is a threshold matter that must be determined at the outset of a case." King v. United States, 81 Fed. Cl. 766, 768 (2008) (citing Steel Co. v. Citizens for a

Better Env't, 523 U.S. 83, 94-95 (1998). When deciding a motion to dismiss for lack of subject matter jurisdiction, this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the plaintiff's favor. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). If defendant challenges jurisdiction, however, the plaintiff cannot merely rely upon allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction by a preponderance of the evidence. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936).; see also Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir. 2002); Catellus Dev. Corp. v. United States, 31 Fed. Cl. 399, 404-405 (1994). This Court may consider all relevant evidence in order to resolve the factual dispute, including evidentiary matters outside the pleadings. Indium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985).

Furthermore, "[t]he mere transfer of a case from the District Court to [the Court of Federal Claims] does not establish jurisdiction . . . ." Singleton v. United States, 6 Ct. Cl. 156, 165 (1984); accord Eubanks v. United States, 25 Ct. Cl. 131, 137 (1992) (citing Berdick v. United States, 222 Ct. Cl. 94, 99 (1979)). Rather, "[t]he claim stated in the complaint must fall within the specific categories enumerated by the Tucker Act or the claim must be dismissed." Eubanks, 25 Ct. Cl. at 137 (citing Aetna Cas. & Sur. Co. v. United States, 228 Ct. Cl. 146, 150-51 (1981)). Moreover, "the defendant is not estopped from arguing lack of [this Court's] jurisdiction even if it may have urged lack of jurisdiction in the District Court based on jurisdiction in [the Court of Federal Claims]." Singleton, 6 Ct. Cl. at 165 (citing Marshall N. Dana Constr., Inc. v. United States, 229 Ct. Cl. 862, 865 (1982)).

### B. The Alleged Express Or Implied-In-Fact Contract Would Be Subject To The Contract Disputes Act

The CDA applies to any express of implied contract entered into by executive agencies for the procurement of property, of services, or of construction, alteration, repair, or maintenance of real property, as well as contracts for the disposal of personal property. See 41 U.S.C. § 602(a); see also Houston v. United States, 60 Fed. Cl. 507, 510 (2004) (The CDA applies to "contracts with executive agencies for the procurement of goods or services."). The eyewear at issue in this litigation constitutes "property." See Amend. Compl. ¶¶ 31, 35. Procurement is "the acquisition by purchase, lease or barter, of property or services for the direct benefit or use of the Federal Government." New Era Constr. v. United States, 890 F.2d 1152, 1157 (Fed. Cir. 1989); Arbitraje Casa De Cambio, S.A. v. United States, 79 Fed. Cl. 235, 240 (2007). The CDA defines an "executive agency" to include any military department, as defined by 5 U.S.C. § 102. See 41 U.S.C. § 601. According to 5 U.S.C. § 102, the Army is a military department. See 5 U.S.C. § 102. Therefore, although F & F has not claimed that the CDA forms a basis for this Court's jurisdiction, the express or implied-in-fact contracts alleged by F & F would indisputably be subject to the CDA.

### C. F & F Has Failed To Satisfy The Jurisdictional Prerequisites Of The Contract Disputes Act

Although the United States generally has consented to suit in this Court upon claims related to contracts with the Government, see 28 U.S.C. § 1491(a), Congress has limited that consent in cases involving contracts subject to the CDA. This Court has "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under . . . the Contract Disputes Act of 1978." 28 U.S.C. § 1491(a)(2). However, a prerequisite to this Court's

jurisdiction under the CDA is that the plaintiff exhaust available administrative remedies by first submitting a claim to the responsible contracting officer and obtaining a final decision from the contracting officer on that claim. 41 U.S.C. § 605(a) ("[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision."); England v. Swanson Group, Inc., 353 F.3d 1375, 1379 (Fed. Cir. 2004); Renda Marine, Inc. v. United States, 65 Fed. Cl. 152, 159 (2005); Ulysses, Inc. v. United States, 66 Fed. Cl. 161, 164 (2005). Accordingly, this Court repeatedly has dismissed claims because a contractor did not present its claim to the contracting officer in accordance with the requirements of the CDA. See, e.g., Reliance Ins. Co. v. United States, 931 F.2d 863, 866 (Fed. Cir. 1991); Deponte Investments, Inc. v. United States, 54 Fed. Cl. 112, 115-116 (2002); Witherington Constr. Corp. v. United States, 45 Fed. Cl. 208, 212 (1999).

In its complaint, F & F does not allege that it submitted a CDA claim to an Army contracting officer. F & F does allege that it "requested payment from the United States for the eyewear, through invoice 006648, dated April 29, 2005." See Amend. Comp. ¶ 18. However, invoice number 00648 does not constitute a CDA claim. To submit a claim for purposes of the CDA, a contractor must make a written, non-routine demand to the contracting officer, request a final decision, and seek the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising from or relating to the contract. Ace Constructors, Inc. v. United States, 70 Fed. Cl. 253, 266 (2006). An invoice or other routine request for payment that is not in dispute when submitted is not a proper claim under the CDA. 48 C.F.R. § 33.201, Kalamazoo Contrs. v. United States, 37 Fed. Cl. 362, 368 (1997); Bannum, Inc. v. United States, 33 Fed. Cl. 672, 675 (1995).

A valid CDA claim need not "be sent only to the contracting officer, or necessarily directly to that officer." See D.L. Braughler Co. v. West, 127 F.3d 1476, 1481 (Fed. Cir. 1997). However, in order to be considered a valid claim, a claim sent indirectly to the contracting officer must "request . . . a final decision ***of the contracting officer***[.]" Id. at 1491 (emphasis added); see also Dawco Constr., Inc. v. United States, 930 F.2d 872, 880 (Fed. Cir. 1991), overruled on other grounds by Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995); Shook v. United States, 26 Cl. Ct. 1477, 1488 (1992). F & F does not allege that invoice number 006648 was provided to an Army contracting officer, or that F & F ever requested that the invoice be forwarded to an Army contracting officer, and there is no indication that this ever occurred. Furthermore, invoice number 006648 does not request the final decision of a contracting officer. See App. 30.

Moreover, for claims of more than $100,000, the CDA imposes a further requirement that the contractor certify to the contracting officer that:

> the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable, and that the certifier is duly authorized to certify the claim on behalf of the contractor.

41 U.S.C. § 605(c)(1) (2000); see also Medina Constr., Ltd. v. United States, 43 Fed. Cl. 537, 547 (1999). Certification discourages the submission of fraudulent or inflated claims by making contractors liable for fraudulent representations. J & E Salvage Co. v. United States, 37 Fed. Cl. 256, 263 (1997); Fischbach and Moore Int'l Corp. v. United States, 987 F.2d 759, 763 (Fed. Cir. 1993).

Invoice number 006648 was for $378,000, and F & F seeks $453,000 in the present litigation, indisputably rendering F & F's claim subject to the CDA's certification requirement. F & F has failed to comply with this requirement, and accordingly, its breach of contract claims must be dismissed for lack of subject matter jurisdiction. See Pevar Co. v. United States, 32 Fed. Cl. 822, 824-25 (1995).

## II. F & F's Implied In Fact Contract Claim Should Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted

Alternatively, F & F's claim for breach of an implied-in-fact contract should be dismissed because it fails to state a claim upon which relief can be granted. Specifically, it fails to sufficiently allege that any individual with authority to bind the United States in contract entered into a contract with F & F.

### A. Applicable Standards

A motion to dismiss pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted is appropriate when the plaintiff's alleged facts do not entitle it to a remedy. Godwin v. United States, 338 F.3d 1374, 1377 (Fed. Cir. 2003); Perez v. United States, 156 F.3d 1366, 1370 (Fed. Cir. 1998). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted, interpreting Fed. R. Civ. P. 12(b)(6)); accord Griffin Broadband Communs., Inc. v. United States, 79 Fed. Cl. 320, 323 (2007). "Legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of

truthfulness." Figueroa v. United States, 57 Fed. Cl. 488, 497 (2003). Stating "a claim requires a complaint with enough factual matter (taken as true) to suggest" an entitlement to relief. Bell Atlantic, 127 S. Ct. at 1965. If the plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Id. at 1974.

### B. F & F Has Not Identified Any Government Employee That It Alleges Had The Authority To Bind The United States In Contract, Or The Source Of Any Alleged Authority To Enter Into Contracts On Behalf Of The United States

It is axiomatic that "[a] well pleaded allegation of an express, or implied-in-fact, contract necessarily includes allegations going to each of the requisite elements of a contract" and that "[t]he requirements for a binding contract are identical for both express and implied contracts." De Archibold v. United States, 57 Fed. Cl. 29, 32 (2003). Accordingly, to survive a 12(b)(6) motion to dismiss, plaintiffs must allege "a mutual intent to contract including offer, acceptance, and consideration . . . ." Id. at 32. Furthermore, to maintain an implied-in-fact contract claim against the United States, a plaintiff must demonstrate that "the Government representative whose conduct is relied upon [had] actual authority to bind the Government in contract." City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990).

In its amended complaint, F & F contends that the protective eyewear was "accepted by authorized personnel." See Amend. Compl. ¶ 23. However, government personnel who are authorized to accept delivery of good and services on behalf of the United States are not necessarily authorized to enter into binding contractual agreements on behalf of the United States. Only contracting officers may enter into contracts on behalf of the government. Stout Rd. Assocs. v. United States, 80 Fed. Cl. 754, 757 (2004); see also 48 C.F.R. § 1.601(a). Many

other government employees may accept deliveries on behalf of the United States.

Furthermore, even if F & F had alleged that the "personnel" who accepted the protective eyewear were authorized to enter into contracts on behalf of the United States, as opposed to accept deliveries of goods on behalf of the United States, F & F's claim would nevertheless fail to state a claim upon which relief may be granted. In McAfee v. United States, 46 Fed. Cl. 428 (2000), the plaintiffs alleged that they had an implied-in-fact contract with the United States, and that a government official with authority either entered into or ratified the contract. McAfee, 46 Fed. Cl. at 431. This Court held that such allegations are insufficient and conclusory where "plaintiffs do not identify any individuals or the source of their authority" and that such "[c]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." Id. at 437. F & F's allegations are equally conclusory and unsupported, in that they fail to identify the individuals with authority who entered into the alleged implied-in-fact contract, or the alleged source of their authority to enter into such contracts on behalf of the United States. Therefore, F & F's implied-in-fact contract claim should be dismissed for failure to state a claim upon which relief can be granted.

### C. F & F Has Not Sufficiently Alleged That Any Government Official With Authority Ratified An Implied-In Fact Contract With F & F

F & F further alleges that "[t]he conduct of the United States, in light of the surrounding circumstances, demonstrates its knowledge, acceptance, approval, retention, and ratification and use of the tactical eyewear provided to it by Plaintiff . . . ." Amend. Compl. ¶ 25. To the extent that F & F intends to claim that the United States has ratified the promise of an unauthorized agent, creating a valid implied-in-fact contract, F & F has failed to sufficiently allege such a

claim.

To ratify an unauthorized commitment, the ratifying official must have the authority to enter into a contractual commitment. See 48 C.F.R. § 1.602-3c(1); City of El Centro v. United States, 922 F.2d 816, 821 (Fed. Cir. 1990); Arakaki v. United States, 71 Fed. Cl. 509, 518 (2006). In addition, ratification can only be based upon an official with ratifying authority's "full knowledge of all the facts upon which the unauthorized action was taken." Gary v. United States, 67 Fed. Cl. 202, 216 (2005); California Sand & Gravel, Inc. v. United States, 22 Cl. Ct. 19, 28 (1990).

F & F has failed to identify any individual or individuals who supposedly ratified the contract, or the source of their authority to do so. Nor has F & F alleged that any ratifying official had full knowledge of the actions of an unauthorized agent. Therefore, F & F has failed to sufficiently allege ratification, and F & F's implied-in-fact contract claim should be dismissed for failure to state a claim upon which relief can be granted. See McAffee, 48 Fed. Cl. at 437.

## III. F & F's Express Contract Claim Should Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted Because F & F Has Failed To Identify Any Source Of Mr. Moore's Alleged Authority To Enter Into Contracts On Behalf Of The United States

F & F alleges that an express contract exists between F & F and the United States because "[i]n ordering the eyewear from Plaintiff, Moore was at all times an authorized agent of the United States acting within the normal scope of his duties." See Amend. Compl. ¶ 37. F & F has not identified the alleged source of Mr. Moore's authority to enter into contracts on behalf of the United States, and therefore, F & F's breach of express contract claim should be dismissed for failure to state a claim upon which relief can be granted. See McAfee, 48 Fed. Cl. at 437.

Furthermore, F & F's allegation that Mr. Moore was acting within the authorized, normal scope of his duties is completely lacking in evidentiary support, and is contradicted by facts in F & F's complaint and amended complaint. In fact, F & F simultaneously states that "Moore pled guilty to several federal charges relating to this matter, in USA v. Moore, 07-244-FJP-DLD, United States District Court for the Middle District of Louisiana, January 16, 2008." See Amend. Compl. ¶ 6 n.1. In F & F's complaint in the United States District Court for the Middle District of Louisiana, F & F alleged that :

> Moore fraudulently prepared certain invoices and statements which were sent to the Plaintiff in regards to the tactical eyewear. Said invoices and statements contained forged signatures perpetuated by parties unknown at this time who may or may not be party to this Complaint.

Compl. ¶ 14; App. 25-26. Therefore, there is no factual basis for F & F's assertion that Mr. Moore was acting as an "authorized agent of the United States acting within the normal scope of his duties" in relation to the eyewear at issue in this litigation.

## IV. F & F's Takings Claim Should Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted

F & F alternatively alleges that the conduct of United States in retaining the eyewear without paying for it constituted an unlawful taking of private property for public use in violation of the Fifth Amendment to the United States Constitution.[9] Amend. Compl. ¶ 35. However, the

[9] In Count Two of F & F's complaint, entitled "Unlawful Taking Without Just Compensation In Violation of the Fifth Amendment to the United States Constitution," F & F seeks to recover $378,000 (presumably based upon the amount of the first order forged by Mr. Moore), plus incidental and consequential damages of $75,000. Amend. Compl. ¶ 33. If F & F could prove a valid takings claim, F & F would be entitled recover the fair market value of the eyewear, not the amount of the first order forged by Mr. Moore. See Yancey v. United States, 915 F.2d 1534, 1542-43 (Fed. Cir. 1990). Furthermore, there can be no recovery for consequential damages as the result of a taking. Yuba Natural Resources, Inc. v. United States,

facts alleged by F & F do not state a valid takings claim, and F & F's claim should be dismissed for failure to state a claim upon which relief can be granted.

### A. F & F Has Failed To Allege Any Congressional Authority For The United States To Take The Eyewear For Public Use

A compensable taking arises only if the government action in question is authorized; either expressly or by necessary implication, by some valid enactment of Congress. See Short v. United States, 50 F.3d 994, 1000 (Fed. Cir. 1995); A-1 Cigarette Vending, Inc. v. United States, 49 Fed. Cl. 345, 350 (2001). Congressional authority is an indispensable requirement of any takings claim brought before this Court. A-1 Cigarette Vending, Inc., 49 Fed. Cl. at 350; Bd. Mach., Inc. v. United States, 49 Fed. Cl. 325, 328 (2001). Government agents possess sufficient authorization to implicate the takings clause if "their actions are a natural consequence of Congressionally approved measures, or are pursuant to the good faith implementation of a Congressional Act." Del-Rio Drilling Programs v. United States, 146 F.3d 1358, 1362 ( Fed. Cir. 1998).

F & F has failed to allege any Congressional authorization for the Army to take or retain the eyewear for public use. Defendant is not aware of any applicable Congressional authority authorizing the Army to do so. Therefore, F & F's takings claim should be dismissed for failure to state a claim upon which relief can be granted. See PI Elecs. Corp. v. United States, 55 Fed. Cl. 279, 291 (2003).

---

904 F.2d 1577, 1581 (Fed. Cir. 1990).

### B. F & F Has Alleged That The Government Acted In Its Proprietary, As Opposed To Sovereign, Capacity

Similarly, the facts alleged by F & F fail to state a takings claim, because F & F has alleged that the United States acted in its proprietary capacity, as opposed to its sovereign capacity, with respect to the eyewear. F & F alleges that "[t]he United States accepted, retained, distributed, and has used the eyewear, but has never paid Plaintiff for the eyewear." Amend. Comp. ¶ 32. F & F further alleges that "[d]espite invoice and subsequent demand for payment, there remains an outstanding amount due and owing of $378.000 . . . ." Id. ¶ 33. These are contentions that the Government entered into a commercial transaction with F & F, and refused to make payment to F & F pursuant to that transaction, rather than allegations that the Government took F & F's property through a sovereign act.

When the Government "comes down from its position of sovereignty, and enters the domain of commerce, it submits itself to the same laws that govern individuals there." J & E Salvage Co. v. United States, 36 Fed. Cl. 192, 195 (1996) (quoting Sun Oil Co. v. United States, 215 Ct. Cl. 716, 770 (1978). As a consequence, a takings claim cannot be based upon the Government's acting in its proprietary capacity. Id., see also Hughes Communications Galaxy, Inc., 271 F.3d 1060, 1070 (Fed. Cir. 2001); Alaska Airlines, Inc. v. Johnson, 8 F.3d 791, 798 (Fed. Cir. 1993) (holding that federal agency actions were undertaken "in the government's proprietary capacity, not its sovereign capacity, and therefore did not constitute a taking.").

In fact, the allegations raised by F & F actually state a quantum meruit claim, not a takings claim. F & F has alleged that it provided the protective eyewear to the Army, that the Army retained the eyewear, and that the Army refused to compensate F & F. Quantum meruit

proceeds upon the theory "that if one party to a transaction provides goods or services to the other party that the parties intended would be paid for, but the recipient refuses to pay for them, the law will imply a contract for the recipient to pay the fair value of what it has received." Perri v. United States, 340 F.3d 1337, 1343 (Fed. Cir. 2003). However, a recovery in quantum meruit is based on an implied-in-law contract, and the Court of Federal Claims lacks jurisdiction over such claims under the Tucker Act. Hercules v. United States, 516 U.S. 417, 423 (1996); Int'l Data Prods. Corp. v. United States, 492 F.3d 1317, 325 (Fed. Cir. 2007); see also 28 U.S.C. § 1491(a)(I).[10]

### C. F&F Has Alleged That A Taking Resulted From Criminal And Unauthorized Conduct

In F & F's complaint, F & F recognizes that "Moore pled guilty to several federal charges relating to this matter, in USA v. Moore, 07-244-FJP-DLD, United States District Court for the Middle District of Louisiana, January 16, 2008." See Amend. Compl. ¶ 6 n.1. Similarly, in F & F's complaint in the United States District Court for the Middle District of Louisiana, F & F alleged that :

> Moore fraudulently prepared certain invoices and statements which were sent to the Plaintiff in regards to the tactical eyewear. Said invoices and statements contained forged signatures perpetuated by parties unknown at this time who may or may not be party to this Complaint.

Compl. ¶ 14; App. 25-26.

---

[10] An exception may arise in situations where a plaintiff provides goods or services to the Government pursuant to an express contract and the Government refuses to pay for them because of defects in the contract that rendered it invalid or unenforceable. Perri, 340 F.3d at 1343-44. However, such an exception is inapplicable in the present case, because an express contact did not exist between the United States and F & F.

When a government official engages in ultra vires conduct, the official "will not, in any legal or constitutional sense, represent the United States, and what he does or omits to do, without the authority of Congress, cannot create a claim against the Government founded upon the Constitution." Del-Rio Drilling Programs v. United States, 146 F.3d 1358, 1362 (Fed. Cir. 1998) (internal quotations omitted). Therefore, when government officers or employees act in contravention of their duties or positions, their actions cannot give rise to a takings claim. PI Elecs. Corp., 55 Fed. Cl. at 291; see also Nicholson v. United States, 77 Fed. Cl. 605, 614 (2007) ("Unauthorized or tortious conduct is not compensable under the Fifth Amendment."). Accordingly, F & F's takings claim should be dismissed for failure to state a claim upon which relief can be granted.

## CONCLUSION

For the foregoing reasons, defendant respectfully request that the Court dismiss F & F's amended complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Reginald T. Blades
REGINALD T. BLADES, JR.
Assistant Director

Of Counsel:
Major Toshene Fletcher
Litigation Attorney
Litigation Division
General Litigation Branch
United States Army

s/ Tara J. Kilfoyle
TARA J. KILFOYLE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn.: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel.: (202) 305-1709
Fax: (202) 307-0972

August 21, 2008

Attorneys for Respondent