No. 08-214C
(Judge Bruggink)

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

F & F SUPPLY, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S APPENDIX

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

REGINALD T. BLADES, JR.
Assistant Director

TARA J. KILFOYLE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530
Tele: (202) 305-1709
Fax: (202) 514-8624

Attorneys for Respondent

OF COUNSEL:
Major Toshene Fletcher
Litigation Attorney
Litigation Division
General Litigation Branch
United States Army

August 21, 2008

# INDEX TO DEFENDANT'S APPENDIX

**Document** **Page Number**

Order For Supplies or Services,
identified as Delivery Order No. DABC-03-05-2005A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Order For Supplies or Services,
identified as Delivery Order No. 001 for Contract DAKF-55-05-S050. . . . . . . . . . . . . . . . 2

E-mail from Oliver Moore to Leonard Lungaro,
dated March 30, 2005. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Invoice from Aearo Company,
dated April 29, 2005. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Estes Express Lines delivery slip . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Check No. 051077 from Security Safety & Supply, Inc.,
dated July 1, 2005. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

E-mail from Oliver Moore to Leonard Lungaro and "fcorey@fidelitybankbr.com,"
dated October 5, 2005. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Indictment, United States District Court for the Middle District of Louisiana,
Criminal No. 07-244-FJP-DLD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Plea Agreement, United States of America v. Oliver Moore III,
United States District Court for the Middle District of Louisiana,
Criminal No. 07-244-FJP-DLD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Minute Entry, United States of America v. Oliver Moore III,
United States District Court for the Middle District of Louisiana,
Criminal No. 07-244-FJP-DLD, dated January 16, 2008. . . . . . . . . . . . . . . . . . . . . . . . . 21

Complaint, F & F Supply, Inc. v. United States of America Department of Defense and Oliver
Moore III, United States District Court for the Middle District of Louisiana,
Case No. 07-15-RET-DLD, with exhibits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Declaration of Jason Fabre.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Declaration of Jacqueline G. Moore, with attached position description
for Integration Systems Analyst. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

**Document** **Page Number**

Declaration of Maxine. Moore. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

Declaration of Rachel Ford. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

# ORDER FOR SUPPLIES OR SERVICES

PAGE 1 OF 1

| 1. CONTRACT/PURCH ORDER/AGREEMENT NO. | 2. DELIVERY ORDER/CALL NO. | 3. DATE OF ORDER/CALL (YYYYMMMDD) | 4. REQUISITION/PURCH REQUEST NO. | 5. PRIORITY |
|---|---|---|---|---|
| | DABC-03-05-2005A | 2005FEB27 | 50420001 | |

**6. ISSUED BY** CODE
Purchasing and Contracting Office
General Services Administration
Fort Worth, Tx 76102

**7. ADMINISTERED BY** *(If other than 6)* CODE

**8. DELIVERY FOB** ☐ DESTINATION ☐ OTHER *(See Schedule if other)*

**9. CONTRACTOR** CODE FACILITY
NAME AND ADDRESS
F & F / Security Safety Supply
1785 Commerical Drive
Port Allen, La. 70767

**10. DELIVER TO FOB POINT BY** *(Date)* (YYYYMMMDD): 2005FEB28

**11. X IF BUSINESS IS** ☐ SMALL ☐ SMALL DISADVANTAGED ☐ WOMEN-OWNED

**12. DISCOUNT TERMS** NET

**13. MAIL INVOICES TO THE ADDRESS IN BLOCK** See Block 15

**14. SHIP TO** CODE
SR HQ HHC ARCENT
OEF
CAMP ARIFJAN
KUWAIT KU

**15. PAYMENT WILL BE MADE BY** CODE
DEFENSE FINANCE AND ACCOUNTING OFFICE
8899 EAST 56TH STREET
INDIANAPOLIS IN 46249-2410

MARK ALL PACKAGES AND PAPERS WITH IDENTIFICATION NUMBERS IN BLOCKS 1 AND 2.

**16. TYPE OF ORDER**
- DELIVERY/CALL [X] This delivery order/call is issued on another Government agency or in accordance with and subject to terms and conditions of above numbered contract.
- PURCHASE [ ] Reference your ___ furnish the following on terms specified herein.

ACCEPTANCE. THE CONTRACTOR HEREBY ACCEPTS THE OFFER REPRESENTED BY THE NUMBERED PURCHASE ORDER AS IT MAY PREVIOUSLY HAVE BEEN OR IS NOW MODIFIED, SUBJECT TO ALL OF THE TERMS AND CONDITIONS SET FORTH, AND AGREES TO PERFORM THE SAME.

| F&F Safety Supply Co | Mike Ferdinand (signature) | Mike Ferdinand | 3/28/05 |
|---|---|---|---|
| NAME OF CONTRACTOR | SIGNATURE | TYPED NAME AND TITLE | DATE SIGNED (YYYYMMMDD) |

☐ If this box is marked, supplier must sign Acceptance and return the following number of copies:

**17. ACCOUNTING AND APPROPRIATION DATA/LOCAL USE**

| 18. ITEM NO. | 19. SCHEDULE OF SUPPLIES/SERVICES | 20. QUANTITY ORDERED/ACCEPTED* | 21. UNIT | 22. UNIT PRICE | 23. AMOUNT |
|---|---|---|---|---|---|
| 1 | PN: 13050 CLEAR TACTICAL SAFETY EYEWEAR | 20,000 | EA | 8.95 | 179,000.00 |
| 2 | PN: 13051 BRONZE TACTICAL SAFETY EYEWEAR | 20,000 | EA | 9.95 | 199,000.00 |

**If quantity accepted by the Government is same as quantity ordered, indicate by X. If different, enter actual quantity accepted below quantity ordered and encircle.*

**24. UNITED STATES OF AMERICA**
BY: MAXINE M. MOORE, GS-13 (signature: Maxine M Moore) CONTRACTING/ORDERING OFFICER

**25. TOTAL** 378,000.00

**29. DIFFERENCES**

**26. QUANTITY IN COLUMN 20 HAS BEEN** ☐ INSPECTED ☐ RECEIVED ☐ ACCEPTED, AND CONFORMS TO THE CONTRACT EXCEPT AS NOTED

DATE — SIGNATURE OF AUTHORIZED GOVERNMENT REPRESENTATIVE

**27. SHIP. NO.** ☐ PARTIAL ☐ FINAL

**28. D.O. VOUCHER NO.**

**30. INITIALS**

**31. PAYMENT** ☐ COMPLETE ☐ PARTIAL ☐ FINAL

**32. PAID BY**

**33. AMOUNT VERIFIED CORRECT FOR**

**34. CHECK NUMBER**

**35. BILL OF LADING NO.**

**36. I CERTIFY THIS ACCOUNT IS CORRECT AND PROPER FOR PAYMENT.**

DATE — SIGNATURE AND TITLE OF CERTIFYING OFFICER

| 37. RECEIVED AT | 38. RECEIVED BY *(Print)* | 39. DATE RECEIVED (YYYYMMMDD) | 40. TOTAL CONTAINERS | 41. S/R ACCOUNT NUMBER | 42. S/R VOUCHER NO. |
|---|---|---|---|---|---|
| | | | | | |

# ORDER FOR SUPPLIES OR SERVICES

| | | | | | |
|---|---|---|---|---|---|
| 1. CONTRACT/PURCH ORDER/AGREEMENT NO. DAKF55-05-S-0050 | 2. DELIVERY ORDER/CALL NO. 0001 | 3. DATE OF ORDER/CALL (YYYYMMMDD) 5042 | 4. REQUISITION/PURCH REQUEST NO. W91PFK50420001 | 5. PRIORITY 12 | |
| 6. ISSUED BY CODE W91PFK<br>SR HQ HHC ARCENT<br>OEF<br>CAMP ARIJAN<br>KUWAIT KU | | 7. ADMINISTERED BY (If other than 6) CODE<br>SEE BLOCK 6 | | 8. DELIVERY FOB<br>[X] DESTINATION<br>[ ] OTHER (See Schedule if other) | |
| 9. CONTRACTOR CODE 9999999999 FACILITY<br>NAME AND ADDRESS F&F SUPPLY, INC.<br>1785 COMMERCIAL DRIVE<br>P O BOX 606<br>PORT ALLEN, LA 70767 | | | 10. DELIVER TO FOB POINT BY (Date) (YYYYMMMDD) 0505<br>12. DISCOUNT TERMS NET<br>13. MAIL INVOICES TO THE ADDRESS IN BLOCK SEE BLOCK 15 | 11. X IF BUSINESS IS<br>[X] SMALL<br>[ ] SMALL DISADVANTAGED<br>[ ] WOMEN-OWNED | |
| 14. SHIP TO CODE W91PFK<br>SR HQ HHC ARCENT<br>OEF<br>CAMP ARIJAN<br>KUWAIT KU | | 15. PAYMENT WILL BE MADE BY CODE<br>DEFENSE FINANCE AND ACCOUNTING OFFICE<br>8899 EAST 56TH STREET<br>INDIANAPOLIS IN 46249-2410 | | MARK ALL PACKAGES AND PAPERS WITH IDENTIFICATION NUMBERS IN BLOCKS 1 AND 2. | |

16. TYPE OF ORDER

[ ] DELIVERY/CALL — This delivery order/call is issued on another Government agency or in accordance with and subject to terms and conditions of above numbered contract.

[X] PURCHASE — Reference your furnish the following on terms specified herein.

ACCEPTANCE. THE CONTRACTOR HEREBY ACCEPTS THE OFFER REPRESENTED BY THE NUMBERED PURCHASE ORDER AS IT MAY PREVIOUSLY HAVE BEEN OR IS NOW MODIFIED, SUBJECT TO ALL OF THE TERMS AND CONDITIONS SET FORTH, AND AGREES TO PERFORM THE SAME.

NAME OF CONTRACTOR | SIGNATURE: Mike Ferguson [signature] | TYPED NAME AND TITLE | DATE SIGNED (YYYYMMMDD)

[ ] If this box is marked, supplier must sign Acceptance and return the following number of

17. ACCOUNTING AND APPROPRIATION DATA/LOCAL USE

97X4930AQBA6DAC5RSM2B7022NL3LNIATS1116 Chargeable to APC: AQBA

| 18. ITEM NO. | 19. SCHEDULE OF SUPPLIES/SERVICES | 20. QUANTITY ORDERED/ ACCEPTED* | 21. UNIT | 22. UNIT PRICE | 23. AMOUNT |
|---|---|---|---|---|---|
| 13250 | PAIR EYEWEAR TACTICAL CLEAR | 40,000 | PR | 8.95 | 358,000.00 |

*If quantity accepted by the Government is same as quantity ordered, indicate by X. If different, enter actual quantity accepted below quantity ordered and encircle.

24. UNITED STATES OF AMERICA BY: RACHAEL FORD CW2 ACCT [signature] CW2 CONTRACTING/ORDERING

25. TOTAL 358,000.00

29. DIFFERENCES

26. QUANTITY IN COLUMN 20 HAS BEEN [ ] INSPECTED [X] RECEIVED [ ] ACCEPTED, AND CONFORMS TO THE CONTRACT EXCEPT AS NOTED

15 Sept 05 [signature] SFC
DATE — SIGNATURE OF AUTHORIZED GOVERNMENT REPRESENTATIVE

27. SHIP. NO. | 28. D.O. VOUCHER NO. | 30. INITIALS
PARTIAL / FINAL | 32. PAID BY | 33. AMOUNT VERIFIED CORRECT FOR
31. PAYMENT: COMPLETE / PARTIAL / FINAL | 34. CHECK NUMBER
35. BILL OF LADING NO.

36. I CERTIFY THIS ACCOUNT IS CORRECT AND PROPER FOR PAYMENT.
DATE — SIGNATURE AND TITLE OF CERTIFYING OFFICER

| 37. RECEIVED AT | 38. RECEIVED BY (Print) | 39. DATE RECEIVED (YYYYMMMDD) | 40. TOTAL CONTAINERS | 41. S/R ACCOUNT NUMBER | 42. S/R VOUCHER NO. |
|---|---|---|---|---|---|
| | | | | | |

DD FORM 1155, JAN 1998 PREVIOUS EDITION MAY BE USED. USAPA V1.00

**Leonard J. Lungaro**

**From:** Moore, Oliver III MR 321TMMC [oliver.moore@usar.army.mil]
**Sent:** Wednesday, March 30, 2005 10:13 AM
**To:** Leonard J. Lungaro (E-mail)
**Subject:** Payment to Vendor

FYI
------Original Message------
From: Maxine Moore
Sent: Tuesday March 30, 2005 9:18 AM
To: DFAS-IN; oliver.moore@us.army.mil
Subject: Payment to Vendor

Request that the vendor F&F SAFETY SUPPLY CO INC. be paid in full for all goods and services provided to U. S. Army under Purchase Order # 50420001. The vendor is ready for shipment to POE immediately. Shipment to POE has been delayed for 10 days because of customs problem in Kuwait, at no fault of the vendor. POC for this action is Mr. Oliver Moore III,Army Materiel Command Repersentative, at COMML: 225-332-2747 or DSN: 863-7102.

MAXINE MOORE
THIRD U. S. ARMY
BUDGET ANALYST, GS-13

# Aearo Company

Please Direct all Inquiries to:
8001 Woodland Drive
Indianapolis, IN 46278
TEL: 1-800-225-9038

# Invoice

Page

| Customer PO No. | Sales Order No. | Date | Invoice No. | Date |
|---|---|---|---|---|
| 39202 | 1491086 | 03/11/2005 | 92423945 | 04/29/2005 |
| | Sales Group | Sales Office | Delivery No. | Date |
| | 020 | DSEA | 82321015 | 04/29/2005 |

Bill To: 5620424
SECURITY SAFETY & SUPPLY, INC
PO Box 755
PORT ALLEN LA 70767
USA

Ship To: 5620424
DEFENSE DIST DEPOT SUSQUEHANNA D
CONSOL AND CONTAINERIZATION PT
NEW CUMBERLAND ARMY DEPOT
BUILDING 2001, EDC, DOOR 135-168
NEW CUMBERLAND PA 17070-5001
USA

Delivery Terms:
PPD

Payment Terms:
1% 10 Days Date of Invoice (+2 Days Standard Delivery Interval), Net 30
Payment must be received by 05/12/2005 for discount to be allowed.

| ITEM NUMBER | ORIG QTY ORDERED | QTY BACK ORDERED | QTY SHIPPED | UNIT PRICE | SALES UOM | NET PRICE |
|---|---|---|---|---|---|---|
| 13250-00000<br>Description: MAXIM BLK ADJ TEM GRY UNDERMOLD CLR LENS<br>Made In: USA<br>Customer Material/Description: 30-13250 | 20,000.000EA | 0.000 | 20,000.000 | 3.35 | EA | 67,000.00 |
| 13251-00000<br>Description: MAXIM BLK ADJ TEM GRY UNDERMOLD BRZ LENS<br>Made In: USA<br>Customer Material/Description: 30-13251 | 20,000.000EA | 0.000 | 20,000.000 | 3.40 | EA | 68,000.00 |

Prompt-pay discount calculated on merchandise only.

Subtotal: 135,000.00

Total amount: 135,000.00 USD

RECEIVED
MAY - 4 REC'D

## Remit To:

Aearo Company
2478 Reliable Parkway
Chicago, IL 60686-0024

AEARO DISTRIBUTION

www.estes-express.com

DELIVERY RECEIPT

| DATE | ORIGIN | DESTINATION | P.O. # |
|---|---|---|---|
| 04/29/05 | IND 093 | HAR 024 | 39202 |

| SHIPPER B/L OR GBL NUMBER | ESTES REV. | ADV. REV. | BYD. REV. |
|---|---|---|---|
| 0082321015 | | | |

093-0676559

PRO NUMBER

CONSIGNEE 2417913
DEFENSE DIST DEPOT SUSQUEHANNA
BLDG 2001 EDC DOOR 135 - 168
SUSQUEHANNA DDSP

NEW CUMBERLAND, PA 17070

5/13
3 P/M
D151

ROUTE (CARRIERS/HR # DATE AND INTERCHANGE POINTS)
Y Y Y Y Y Y Y N
5001697

BILL CHARGES TO
AEARO COMPANY EDI
NORCROSS, GA 30091

SHIPPER 9303150
AEARD CO
8001 WOODLAND DRIVE
INDIANAPOLIS, IN 46278

# S/W SKIDS DEL'D INTACT ______ # SKIDS DEL'D ______ # EMPTY SKIDS RET'D ______
☐ GOOD ORDER ☐ SHORT ☐ OVER ☐ DAMAGE # POS SORT & SEG: ______
DESCRIBE EXCEPTIONS:

| # PCS. | HM | DESCRIPTION OF ARTICLES AND SPECIAL MARKINGS | WEIGHT/LBS | RATE | TOTAL CHARGES |
|---|---|---|---|---|---|
| | | MC - CUBIC CAPACITY/DENSITY | | | [redacted] |
| 10 | | SK SAID TO CONTAIN | | | |
| | | CT STC SAFETY EQUIPMENT 156600-4 | 2,800 | | |
| | | CARRIER NOT LIABLE FOR PC COUNT | | ✓ | |
| | | CT 00400 CT ON SHIPPER WRAPPED SKIDS | | | |
| | | SHIPPER LOAD & COUNT | | | |
| | | ORIG BILL READ CL 125 @ 2800 LB X | | | |
| | | 48.86=618.37........MEAS........... | | | |
| | | 9 @ 42 X 48 X 72=756.00 CF | | | |
| | | 1 @ 42 X 48 X 71.25=83.12 CF, TLT CF | | | |
| | | OF 839.12 X 4 (PER EXLA 105 I 615)= | | | |
| | | ---CONTINUED NEXT PAGE--- | | | |

Rec'd the above property in good condition except as noted above. | * Shipments taking more than 15 minutes to load/unload may be subject to additional charges see back. | TIME IN | TIME OUT | DRIVER | DATE | ADDITIONAL CODE

FIRM | BY

Requested by: KRISTEN | 050605 1221 | 093-0676559

... FAX 317 ... 5760 AEARO DISTRIBUTION 004

www.estes-express.com DELIVERY RECEIPT

| DATE | ORIGIN | DESTINATION | P.O. # |
|---|---|---|---|
| 04/29/05 | IND 093 | HAR 024 | 39202 |

PRO NUMBER 093-0676550

| SHIPPER B/L OR GBL NUMBER | ESTES REV. | ADV. REV. | BYD. REV. |
|---|---|---|---|
| 0082321015 | | | |

CONSIGNEE 2417913
DEFENSE DIST DEPOT SUSQUEHANNA
BLDG 2001 EDC DOOR 135 - 168
SUSQUEHANNA DDSP
NEW CUMBERLAND, PA 17070

ROUTE (CARRIERS, S/A & DATE AND INTERCHANGE POINTS)
Y Y Y Y Y Y Y N
5001697

BILL CHARGES TO
AEARO COMPANY EDI
NORCROSS, GA 30091

SHIPPER 9303150
AEARO CO
8001 WOODLAND DRIVE
INDIANAPOLIS, IN 46278

# S/W SKIDS DEL'D INTACT 10 # SKIDS DEL'D 10 # EMPTY SKIDS RET'D 0
☑ GOOD ORDER ☐ SHORT ☐ OVER ☐ DAMAGE # PCS SORT & SEG
DESCRIBE EXCEPTIONS:

| # PCS. | HM | DESCRIPTION OF ARTICLES AND SPECIAL MARKINGS | WEIGHT/LBS | RATE | TOTAL CHARGES |
|---|---|---|---|---|---|
| | | CAL WT OF 3,356 LB AT CL. 125....... | | | [redacted] |
| | | .....RP WR 055 | | | |
| | | ****TEMPORARY FUEL SURCHARGE **** | | | |
| 10 | | Thanks for shipping ESTES EXPRESS LINES | 2,800 | | |
| | | Call (717) 266-1620 for inquiries regarding this freight [redacted] | | | |

Rec'd the above property in good condition, except as noted above.
FIRM BY [signature] TIME IN 15:50 TIME OUT 16:15 DRIVER J. Myers DATE 5-3-05 ACCESSORIAL CODE X

Requested by: KRISTEN 050805 1227 093-0676550

051077

SUPPLIER # AEARO AEARO COMPANY
05/01/05 92423945 135,000.00 .00 135,000.00

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

SECURITY SAFETY & SUPPLY, INC.

1785 COMMERCIAL DRIVE
PORT ALLEN, LA 70767

P.O. DRAWER 755
(225) 387-1567

FIDELITY BANK AND TRUST
BATON ROUGE, LA

84-724
2654

051077

CHECK NO.
051077

ONE HUNDRED*THIRTY FIVE THOUSAND - - - - - - - - - - - - - - - - - - - - - - - $ 00

DATE AMOUNT

JUL 01 2005 **135,000.00

PAY TO THE ORDER OF:

AEARO COMPANY
2470 RELIABLE PARKWAY
CHICAGO IL 60606-0024

NON-NEGOTIABLE

⑈051077⑈ ⑆265472415⑆ ⑈1429465⑈

SECURITY FEATURES INCLUDED. DETAILS ON BACK.

Subject: FW: W91PFK
Date: Wed, 5 Oct 2005 15:19:32 -0400
X-MS-Has-Attach: yes
X-MS-TNEF-Correlator:
Thread-Topic: W91PFK
Thread-Index: AcXJvi8lQNo8FfLQSBORty9CJyk4uwAA5cTwAAd2mPA=
From: "Moore, Oliver III MR 321TMMC" <oliver.moore@usar.army.mil>
To: <llungaro@securitysafetyinc.com>,
<fcorey@fidelitybankbr.com>
X-OriginalArrivalTime: 05 Oct 2005 19:19:34.0167 (UTC) FILETIME=[B7FEA270:01C5C9E1]
X-RCPT-TO: <fcorey@fidelitybankbr.com>

Leonard

Here is the latest. I will stay on top of this to the end, I am also sending this to your bank.

v/r

OLIVER MOORE III
AMC CTASC REP (LAISO)
321ST TMMC
DSN: 863-7102
COMML: 225-332-2743
E-MAIL: oliver.moore@us.army.mil

---

**From:** EBANKS, RACHEL [mailto:RACHEL.EBANKS@DFAS.MIL]
**Sent:** Wednesday, October 05, 2005 10:32 AM
**To:** Moore, Oliver III MR 321TMMC
**Subject:** RE: W91PFK

Oliver. the contract will be paid by St. Louis. It will be forwarded to St. Louis.

-----Original Message-----
**From:** Moore, Oliver III MR 321TMMC [mailto:oliver.moore@usar.army.mil]
**Sent:** Wednesday, October 05, 2005 10:05 AM
**To:** EBANKS, RACHEL
**Subject:** W91PFK

Rachel

Here is what I have received from the personnel on the ground in Kuwait. All the items have been received and accounted. The receipt has been place into SARSS for accountability. Please I will contact you this afternoon or send me an e-mail when you get this.

v/r

Oliver Moore III
AMC CTASC REP
DSN: 863-7102
Comml: 225-332-2743
E-mail: oliver.moore@us.army.mil

Bav1122.pdf

FILED
U.S. DIST. COURT
MIDDLE DIST. OF LA
2007 OCT 17 PM 2:52

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**INDICTMENT FOR MAKING FALSE STATEMENTS TO THE UNITED STATES, FOR FORGERY AGAINST THE UNITED STATES, AND FOR MAKING FALSE STATEMENTS TO A FEDERALLY INSURED BANK**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>versus<br>OLIVER MOORE, III | : | CRIMINAL NO. 07-244-FJP DLD<br>18 U.S.C. § 1001(a)(2)<br>18 U.S.C. § 495<br>18 U.S.C. § 1014<br>18 U.S.C. § 2 |

THE GRAND JURY CHARGES:

At all times relevant to this Indictment:

1. **OLIVER MOORE, III**, defendant herein, was a civilian employee of the United States Army, assigned as an Integration Supply Systems Analyst to the 321st Theater Material Management Command, Army Materials Command, in Baton Rouge, Louisiana.

2. When supplies were needed for United States Army soldiers serving in the Middle East, one procedure for securing such materials was a procurement request to be sent via the Army's Corps Theater Automated Service Center. Such a request could generate a purchase order in the Standard Army Retail Supply System and would require funding from an authorized approving official. Normally, a bidding process was utilized to ensure the Army received quality products at the best price.

3. The procurement process was monitored by contracting officers, authorized to approve purchases for the Army. Defendant **MOORE** did not have authority to make such purchases of supplies on behalf of the Army.

4. LL was the owner of Security Safety & Supply, Inc. (S&S), a retail company engaged in providing safety and security equipment, including the resale of safety eyeglasses it purchased from another supplier, Aearo Company. LL was also the minority owner of F&F Safety and Supply Company (F&F).

5. MF was the primary owner of F&F, also a retail company engaged in providing safety and security equipment. MF was a friend of defendant **MOORE**.

6. On or about April 29, 2005, Aearo Company billed S&S for 40,000 pairs of eyeglasses, which were to have been shipped overseas through an Army depot in Pennsylvania.

7. Fidelity Bank was a financial institution in Baton Rouge, the deposits of which were insured by the Federal Deposit Insurance Corporation. Fidelity Bank had extended a $1,000,000 line of credit to S&S in August 2003, which was increased to $1,300,000 on or about June 30, 2005. The increase was based, in part, upon a change in the terms of the agreement of indebtedness of S&S to Fidelity Bank, whereby the bank became further secured by a pledge of all accounts receivable of F&F. For its loan to S&S, the effect of the change in terms was to grant Fidelity Bank a pledge, claim, and secured interest to any accounts receivable which F&F might obtain from any source, including the Army.

8. At an exact date unknown to the grand jury, but between February and September 2005, despite no official Army authorization or requisition from either S&S or F&F, approximately 40,000 pairs of safety eyeglasses, manufactured by Aearo Company and purchased by S&S, were shipped from Aearo Company through the Army's Susquehanna Defense Distribution Depot in New Cumberland, Pennsylvania, to Kuwait City, Kuwait, and were ultimately dispersed to Army soldiers serving in Iraq.

9. Each of paragraphs 1 through 8 are incorporated by reference into each Count of the Indictment.

**COUNT 1**

10. In or about May 2005, in the Middle District of Louisiana, in a matter within the jurisdiction of the United States Army, part of the executive branch of government of the United States, **OLIVER MOORE, III**, knowingly and willfully did make materially false statements and representations, in that he (1) forged the signature of a contracting and ordering officer of the United States Army and back-dated an Order for Supplies or Services form to February 28, 2005, to purchase 40,000 pairs of "tactical safety eyewear" from F&F at a cost of $378,000, (2) fraudulently indicated the Order had been issued by the General Services Administration,. and (3) issued a false contract number, knowing in fact that the Army had not so ordered the glasses, but that he had done so in order to enrich his friend, MF, and others at F&F.

The above is a violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

**COUNT 2**

11. In or about May 2005, in the Middle District of Louisiana, **OLIVER MOORE, III**, knowingly forged the signature of a contracting and ordering officer of the United States Army on an Order for Supplies or Services form, authorizing the purchase 40,000 pairs of "tactical safety eyewear" from F&F, for the purpose of enabling his friend, MF, and others at F&F to obtain and receive approximately $378,000 from the United States.

The above is a violation of Title 18, United States Code, Sections 495 and 2.

**COUNT 3**

12. On or about September 15, 2005, in the Middle District of Louisiana, in a matter within the jurisdiction of the United States Army, part of the executive branch of government of the United States, **OLIVER MOORE, III**, knowingly and willfully did make materially false statements and representations, in that he (1) created a second Order for Supplies or Services for the 40,000 pairs of tactical eyewear purchased from F&F referenced in Count 1, (2) forged the signature of a contracting and ordering officer of the United States Army, (3) forged the signature of the authorized government representative, indicating the

eyewear had been received, and (4) listed a false contracting number, knowing, in fact, that the Army had not ordered the glasses, but that he had done so in order to enrich his friend MF and others at F&F.

The above is a violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

**COUNT 4**

13. On or about September 15, 2005, in the Middle District of Louisiana, **OLIVER MOORE, III**, knowingly forged the signature of a contracting and ordering officer of the United States Army and forged the signature of the authorized government representative on an Order for Supplies or Services, indicating that 40,000 pairs of eyewear had been received, for the purpose of enabling his friend, MF, and others at F&F to obtain and receive approximately $358,000 from the United States.

The above is a violation of Title 18, United States Code, Sections 495 and 2.

**COUNT 5**

14. On or about October 5, 2005, in the Middle District of Louisiana, **OLIVER MOORE, III**, knowingly made and caused to be made a false statement for the purpose of influencing the action of Fidelity Bank in connection with a line of credit extension loan to S&S, in that defendant **MOORE** sent a copy of an e-mail message, sent from an Army finance clerk to a him, to a vice president of Fidelity Bank, which message indicated that payment on the contract for the eyeglasses would be forthcoming, and which e-mail message was falsified by including a copy of an earlier e-mail message he purportedly sent to the finance clerk, which message included a copy of the forged contract referenced in Counts 3 and 4. The e-mail message thereby gave the vice president and other officers at Fidelity Bank a false sense of security regarding the bank's loan to S&S and contributed to the bank's decision not to take any adverse action on the loan because of the anticipated revenue to be generated by F&F's receipt of the contract payment, which revenue was pledged to the bank, when, in truth and fact, as defendant **MOORE** well knew, the e-mail message he sent to the bank contained a copy of the earlier e-mail message he purportedly sent to the finance clerk,

and which message contained a copy of the forged contract referenced in Counts 3 and 4, when he well knew he had not sent such message to the finance clerk.

The above is a violation of Title 18, United States Code, Sections 1014 and 2.

UNITED STATES OF AMERICA, by

**A TRUE BILL**

REDACTED
PER PRIVACY ACT

GRAND JURY FOREPERSON

DAVID R. DUGAS
UNITED STATES ATTORNEY
MIDDLE DISTRICT OF LOUISIANA

IAN F. HIPWELL
ASSISTANT U.S. ATTORNEY

DATE

FILED IN COURT
JAN 16 2008
U.S. DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

UNITED STATES OF AMERICA :

*versus* : CRIMINAL NO. 07-244-FJP-DLD

OLIVER MOORE, III :

**PLEA AGREEMENT**

1.

The Office of the United States Attorney for the Middle District of Louisiana, through undersigned counsel, and the above-named defendant agree that the defendant will enter pleas of guilty to Counts 1 and 3 of the Indictment, charging making false statements to the United States, in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

2.

The United States Attorney and the defendant agree that, if the Court accepts the guilty pleas, the United States will move to dismiss the remaining counts of Criminal No. 07-244 at the time of sentencing, and no additional criminal charges related to the violations contained in the Indictment will be brought against the defendant in this district.

3.

The defendant agrees to provide complete and truthful information to any law enforcement agent or attorney of the United States and at any grand jury proceeding or trial. The defendant waives the Fifth Amendment privilege against self-incrimination. This Plea Agreement, however, is not conditioned upon any obligation of the United States to receive, or act upon, information which the defendant may now or in the future provide or stand ready to provide.

4.

The United States Attorney agrees to inform the Court of defendant's actions pursuant to this Plea Agreement. The United States, however, is not obliged, as a condition of this Plea Agreement, to file any motion with the Court, either for a downward departure under Section 5K1.1 of the United States Sentencing Guidelines or to reduce the defendant's sentence under Rule 35 of the Federal Rules of Criminal Procedure. If a motion is filed, the Court, in its discretion, may or may not reduce the sentence below the guidelines range otherwise applicable.

5.

Except as otherwise provided herein, no truthful testimony or other information provided by the defendant pursuant to this Plea Agreement, or any information derived therefrom, will be used against the defendant in any criminal trial.

6.

If the defendant refuses to provide truthful information or testimony, or provides false or misleading information or testimony, he may, after a judicial finding of such, be prosecuted for any offense covered by this agreement, and all statements and information provided by the defendant may be used against him. The defendant's pleas of guilty may not be withdrawn.

7.

The defendant agrees to fully and truthfully complete the financial statement provided to him by the Office of the United States Attorney and to return the financial statement to the undersigned Assistant United States Attorney within ten days of this agreement being filed with the Court. Further, upon request, he agrees to provide the Office of the United States Attorney with any information or documentation in his possession regarding his financial affairs and agrees to submit to a debtor's examination when requested. The defendant agrees to provide this information whenever requested until such time as any judgment or claim

against him, including principal, interest, and penalties is discharged or satisfied in full. This information will be utilized to evaluate his capacity to pay the government's claim or judgment against him, whatever that claim or judgment may be. If the defendant refuses to comply with this paragraph or provides false or misleading information, he may, after a judicial finding of such, be prosecuted for any offense covered by the agreement, and all statements and information provided by the defendant may be used against him. The defendant's pleas of guilty may not be withdrawn.

8.

The defendant hereby expressly waives the right to appeal his conviction and sentence, including any appeal right conferred by Title 18, United States Code, Section 3742, and to challenge the conviction and sentence in any post-conviction proceeding, including a proceeding under Title 28, United States Code, Section 2255. The defendant, however, reserves the right to appeal the following: (a) any punishment imposed in excess of the statutory maximum; (b) any punishment which is an upward departure pursuant to the guidelines; and (c) any punishment which is above the guidelines range calculated by the Court. Nothing in this paragraph shall act as a bar to the defendant perfecting any legal remedies he may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel.

9.

The defendant understands that, as a result of this Plea Agreement, for each of Counts 1 and 3 he could receive a maximum sentence of five (5) years imprisonment, a fine the greatest of twice the gross gain, twice the gross loss, or $250,000, or both the maximum term of imprisonment and the maximum fine. In addition, the Court must impose a special assessment of $100, which defendant agrees to pay at the time of sentencing. The Court may also order restitution in accordance with law. The maximum total sentencing exposure is thus ten (10) years imprisonment, a fine the greatest of twice the gross gain, twice the gross

loss, or $500,000, or both the maximum term of imprisonment and the maximum fine, plus any restitution award. While this case involves the improper awarding by the defendant of a contract to furnish 40,000 pairs of safety eyeglasses to the Army, the Court is informed that the eyeglasses were indeed received by the Army, and that fact should be taken into consideration in fashioning any restitution award. The defendant understands that, if the Court imposes a term of imprisonment, he may also receive a term of supervised release after imprisonment of not more than three (3) years. The defendant further understands that supervised release is a period of supervision during which he must comply with certain rules. Supervised release is imposed in addition to a sentence of imprisonment, and a violation of the conditions of supervised release can subject the defendant to imprisonment for a term of two years, without credit for any time already served on the term of supervised release. The defendant understands that the Court, while not bound to apply the Sentencing Guidelines, must consult the guidelines and take them into account when sentencing.

10.

Pursuant to Section 3E1.1(a), United States Sentencing Guidelines, should the Court find that the defendant qualifies for a two level decrease in offense level for acceptance of responsibility, and, prior to the operation of Section 3E1.1(a), the defendant's offense level is 16 or greater, pursuant to Section 3E1.1(b) of the guidelines, the United States and defendant further agree that at the time of sentencing the United States will move the Court to decrease defendant's offense level by one additional level for acceptance of responsibility.

11.

For purposes of Rule 11(b)(3) of the Federal Rules of Criminal Procedure and pursuant to Section 6B1.4 of the United States Sentencing Guidelines, the United States and the defendant stipulate to the following factual basis:

> Oliver Moore, III was a civilian employee of the United States Army, assigned as an Integration Supply Systems Analyst to the 321st Theater Material Management Command, Army Materials Command, in Baton Rouge,

Louisiana.

When supplies were needed for United States Army soldiers serving in the Middle East, one procedure for securing such materials was a procurement request to be sent via the Army's Corps Theater Automated Service Center. Such a request could generate a purchase order in the Standard Army Retail Supply System and would require funding from an authorized approving official. Normally, a bidding process was utilized to ensure the Army received quality products at the best price.

The procurement process was monitored by contracting officers, authorized to approve purchases for the Army. Defendant Moore did not have authority to make such purchases of supplies on behalf of the Army.

LL was the owner of Security Safety & Supply, Inc. (S&S), a retail company engaged in providing safety and security equipment, including the resale of safety eyeglasses it purchased from another supplier, Aearo Company. LL was also the minority owner of F&F Safety and Supply Company (F&F).

MF was the primary owner of F&F, also a retail company engaged in providing safety and security equipment. MF was a friend of defendant Moore.

On or about April 29, 2005, Aearo Company billed S&S $135,000 for 40,000 pairs of eyeglasses, which were to have been shipped overseas through an Army depot in Pennsylvania.

Fidelity Bank was a financial institution in Baton Rouge, the deposits of which were insured by the Federal Deposit Insurance Corporation. Fidelity Bank had extended a $1,000,000 line of credit to S&S in August 2003, which was increased to $1,300,000 on or about June 30, 2005. The increase was based, in part, upon a change in the terms of the agreement of indebtedness of S&S to Fidelity Bank, whereby the bank became further secured by a pledge of all accounts receivable of F&F. For its loan to S&S, the effect of the change in terms was to grant Fidelity Bank a pledge, claim, and secured interest to any accounts receivable which F&F might obtain from any source, including the Army.

At an exact date unknown to the grand jury, but between February and September 2005, despite no official Army authorization or requisition from either S&S or F&F, approximately 40,000 pairs of safety eyeglasses, manufactured by Aearo Company and purchased by S&S, were shipped from Aearo Company through the Army's Susquehanna Defense Distribution Depot in New Cumberland, Pennsylvania, to Kuwait City, Kuwait, and were ultimately dispersed to Army soldiers serving in Iraq.

In or about May 2005, in the Middle District of Louisiana, in a matter within the jurisdiction of the United States Army, part of the executive branch of government of the United States, Oliver Moore, III, knowingly and willfully did make materially false statements and representations, in that he (1) forged the signature of a contracting and ordering officer of the United States Army

and back-dated an Order for Supplies or Services form to February 28, 2005, to purchase 40,000 pairs of "tactical safety eyewear" from F&F at a cost of $378,000, (2) fraudulently indicated the Order had been issued by the General Services Administration, and (3) issued a false contract number, knowing in fact that the Army had not so ordered the glasses, but that he had done so in order to enrich his friend, MF, and others at F&F.

On or about September 15, 2005, in the Middle District of Louisiana, in a matter within the jurisdiction of the United States Army, part of the executive branch of government of the United States, Oliver Moore, III, knowingly and willfully did make materially false statements and representations, in that he (1) created a second Order for Supplies or Services for the 40,000 pairs of tactical eyewear purchased from F&F referenced in Count 1, (2) forged the signature of a contracting and ordering officer of the United States Army, (3) forged the signature of the authorized government representative, indicating the eyewear had been received, and (4) listed a false contracting number, knowing, in fact, that the Army had not ordered the glasses, but that he had done so in order to enrich his friend MF and others at F&F.

On or about October 5, 2005, Oliver Moore, III, made a false statement for the purpose of influencing the action of Fidelity Bank in connection with a line of credit extension loan to S&S, in that he sent a copy of an e-mail message, sent from an Army finance clerk to him, to a vice president of Fidelity Bank, which message indicated that payment on the contract for the eyeglasses would be forthcoming, but which e-mail message was falsified by including a copy of an earlier e-mail message he purportedly sent to the finance clerk, which message purported to have included a copy of the forged contract referenced in Counts 3 and 4 of the indictment. In truth and fact, Moore knew he had not sent such message or copy of the contract to the finance clerk. The copy of the e-mail message Moore gave the vice president and other officers at Fidelity Bank thereby gave them a false sense of security regarding the bank's loan to S&S and contributed to the bank's decision not to take any adverse action on the loan because of the anticipated revenue to be generated by F&F's receipt of the contract payment, which revenue was pledged to the bank.

The defendant understands that the Court is not bound by these stipulations.

12.

Pursuant to Rule 11(c)(3)(A) and 11(c)(5), Federal Rules of Criminal Procedure, the Court may accept or reject this Plea Agreement or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the Presentence Report. If the Court rejects the Plea Agreement, the Court, on the record, will so inform the defendant and advise the defendant that the Court is not bound by the Plea Agreement. The Court will give the defendant an opportunity to withdraw the pleas and will advise the defendant that, if the

pleas are not withdrawn, the disposition of the case may be less favorable to the defendant than contemplated by the Plea Agreement.

13.

The defendant acknowledges that there is no agreement with the United States as to the actual sentence that will be imposed by the Court as a result of this Plea Agreement and acknowledges that no promises or assurances have been made to him as to what the sentence will be. The defendant acknowledges that the terms herein constitute the entire agreement and that no other promises or inducements have been made. The defendant acknowledges that he has not been threatened, intimidated, or coerced in any manner.

14.

The defendant acknowledges that this Plea Agreement has been entered into knowingly, voluntarily, and with the advice of counsel, and that he fully understands the agreement. The defendant has no objection to the legal representation he has received.

This Plea Agreement is entered into this 9th day of January, 2008, at Baton Rouge, Louisiana.

UNITED STATES OF AMERICA, by

Oliver Moore III
OLIVER MOORE, III
DEFENDANT

for DAVID R. DUGAS, LBN 5134
UNITED STATES ATTORNEY

A "HANNIBAL" JOINER, LBN 02001
ATTORNEY FOR DEFENDANT
1606 Scenic Highway
Baton Rouge, LA 70802
Telephone: (225) 383-9320
Fax: (225) 343-7076

IAN F. HIPWELL, LBN 06947
ASSISTANT U.S. ATTORNEY
777 Florida Street, Suite 208
Baton Rouge, LA 70801
Telephone: (225) 389-0443
Fax: (225) 389-0561

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MINUTE ENTRY:
January 16, 2008
DISTRICT JUDGE FRANK J. POLOZOLA

UNITED STATES OF AMERICA

CRIMINAL

VERSUS

NO. 07-244-FJP-DLD

OLIVER MOORE, III

This matter came on this day for re-arraignment.

PRESENT: Ian F. Hipwell
Assistant U. S. Attorney

A. Hannibal Joiner
Attorney for defendant

Oliver Moore, III
Defendant

Plea agreement is filed.

The defendant enters pleas of guilty to Counts I and III of the Indictment.

The defendant is sworn and questioned by the Court.

The factual basis for the pleas of guilty is contained in paragraph 11 of the plea agreement.

The Court finds that the defendant has knowingly, voluntarily and intelligently, with the advice of his lawyer entered guilty pleas to Counts I and III of the Indictment. The Court further finds that the elements required to support a conviction under 18 U.S.C. §1001(a)(2)and 2 have been satisfied. The Court finds that

Doc#45006

there is a sufficient factual basis for the guilty pleas. The Court further finds that, based on the defendant's answers under oath, the defendant has received the effective assistance of counsel in this case. Therefore, the Court accepts the defendant's guilty pleas and the plea agreement.

The Court orders a pre-sentence investigation.

The defendant is released on bond previously set by the Magistrate Judge.

* * * * *

Court Reporter: E. Champion
C: CR 9; T: 1:00

Doc#45006

FILED
U.S. DIST. COURT
MIDDLE DIST. OF LA

2007 JAN -8 PM 2:24

SIGN DL
BY DEPUTY CLERK

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT
DISTRICT OF LOUISIANA

F & F SUPPLY, INC.
*Plaintiff*

CASE NO.: 07-15-RET-DLD

VERSUS

UNITED STATES OF AMERICA
DEPARTMENT OF DEFENSE and
OLIVER MOORE, III
*Defendant*

**COMPLAINT**

NOW INTO COURT, through undersigned counsel, comes F & F SUPPLY, INC. ("F & F"), a Louisiana corporation domiciled in West Baton Rouge Parish, Louisiana, who respectfully represents that:

1.

Made defendants herein are Oliver Moore, III, a major resident of and domiciled in East Baton Rouge, Louisiana, who is indebted, unto plaintiff in the amount of THREE HUNDRED SEVENTY EIGHT THOUSAND and NO/100 ($378,000.00) plus all damages that are reasonable in the premises, with legal interest thereon from judicial demand, plus cost of these proceedings and reasonable attorney fees.

2.

Also made defendant herein is the United States of America Department of Defense, who is

-) 5-2 - summons

indebted, unto plaintiff in the amount of THREE HUNDRED SEVENTY EIGHT THOUSAND and NO/100 ($378,000.00) plus all damages that are reasonable in the premises, with legal interest thereon from judicial demand, plus cost of these proceedings and reasonable attorney fees.

3.

Both defendants herein are indebted unto the Plaintiff in solido for the amounts prayed for herein.

4.

This Court has jurisdiction over this matter pursuant to the United States Constitution Article III Section 2.

5.

On or about September 2004, Plaintiff was contacted by Oliver Moore, III (hereinafter, "Moore") on behalf of the United States of America Department of Defense for the purchase of certain tactical eyewear for the United States Army.

6.

Upon information and belief, Moore is an Army Material Command Representative who was at all times herein authorized to purchase equipment on behalf of the Department of Defense. Further, Moore is a AMC CTASC REP (LAISO) 321ST TMMC.

7.

The tactical eyewear was ordered by Security Safety & Supply Inc. from the supplier, Aearo Company. Plaintiff purchased and paid for the above eyewear to fill the order of the Defendants.

8.

The Plaintiff provided the tactical eyewear to the Army and/or Department of Defense as agreed and ordered by Moore.

9.

The order was filled and the eyewear shipped to and received by the United States of America Army and/or Department of Defense at the Distribution Center in Newcumberland, Pennsylvania.

10.

Receipt of the eyewear has been acknowledged through correspondence between the parties as well as through numerous conversations with members of the Department of Defense.

11.

Plaintiff has faithfully completed all aspects of the job within its control.

12.

The Plaintiff's invoice dated April 29, 2005, for the sums due for the product noted above is attached and made a part hereto as Exhibit "A."

13.

Despite amicable demand, the defendants have refused to compensate Plaintiff pursuant to the contract and/or agreement between the parties.

14.

During its attempts to be compensated for the products delivered, Plaintiff has discovered

that Moore fraudulently prepared certain invoices and statements which were sent to the Plaintiff in regards to the tactical eyewear. Said invoices and statements contained forged signatures perpetrated by parties unknown at this time who may or may not be party to this Complaint. Please see Exhibits "B" and "C."

15.

While the United States Department of Defense has recognized the receipt of the eyewear, it has stated that it is unable to compensate F & F at this time due to the fraudulent actions and through no fault of F & F.

16.

Upon information and belief, federal investigators with the Department of Defense - Defense Criminal Investigative Service are currently involved in this matter and have found that the Plaintiff is a victim of fraud. It is further believed that this matter is currently in criminal litigation and may or may not go to trial at some point for criminal charges against the fraudulent party.

17.

Plaintiff was nearly put out of business as a result of the above noted dealings and its inability to get paid on the order provided to the Defendants.

18.

As a small local business, the Plaintiff was forced to refinance its building in order to sustain operations as a result of the defendants' failure to compensate for the goods/services provided.

19.

Plaintiff has incurred damages as a result of the failure of the defendants to compensate them for the goods and/or services provided including, but not limited to:

a. Additional bank interest charges;

b. Additional bank charges to refinance building;

c. Early payment fee lost as a result of refinance;

d. Damages for the extensive time expended by the Plaintiff in its attempts to collect that which is due;

e. All costs of collection; and

f. Attorney's fees.

**WHEREFORE**, F & F SUPPLY, INC. prays that after due proceedings had, there be judgment herein in favor of F & F SUPPLY, INC. and against the United States of America Department of Defense and Oliver Moore, III, in solido, for the amount of THREE HUNDRED SEVENTY EIGHT THOUSAND and NO/100 ($378,000.00) plus all damages that are reasonable in the premises, with legal interest thereon from judicial demand, plus all costs associated with this matter and reasonable attorney fees.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT
DISTRICT OF LOUISIANA

F & F SUPPLY, INC.
*Plaintiff*

CASE NO.: ________________

VERSUS

UNITED STATES OF AMERICA
DEPARTMENT OF DEFENSE and
OLIVER MOORE, III
*Defendant*

RESPECTFULLY SUBMITTED:

DAVID M. COHN, LBR #4237
D. BRIAN COHN, LBR #28000
BARTLEY P. BOURGEOIS, LBR#26606

Attorneys for Plaintiff
THE COHN LAW FIRM
10754 Linkwood Court, Ste. 1
Baton Rouge, LA 70810
Phone: (225) 769-0858
Fax: (225) 769-1016

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT
DISTRICT OF LOUISIANA

F & F SUPPLY, INC.
*Plaintiff*

CASE NO.: ______________

VERSUS

UNITED STATES OF AMERICA
DEPARTMENT OF DEFENSE and
OLIVER MOORE, III

*Defendant*

**PLEASE ISSUE SUMMONS TO:**
United States of America
Department of Defense
United States Attorney for the Middle District

And

Oliver Moore, III
Commander 321 1st MMC
1735 Foss Street
Baton Rouge, Louisiana

F&F SUPPLY, INC.
1785 COMMERCIAL DRIVE
P O BOX 606
PORT ALLEN, LA 70767
(504)343-5270

*****INVOICE*****

SOLD TO:
DEFENSE FINANCE AND ACCOUNTING
8899 EAST 56TH STREET
INDIANAPOLIS, IN 46249-2410

SHIP TO:
DEFENSE DISTRIBUTION DEPOT
SUSQUEHANNA (DSSP)
2001 MISSION DRIVE
NEW CUMBERLAND, PA 17070

| INVCE# | INVCE-DATE | SALESMAN | REQ-DATE | SHIP-VIA | WGHT | PGE |
|---|---|---|---|---|---|---|
| 006648 | APR 29 2005 | LL | | MOTOR/FRT | | |

| CUST# | CUST PO NUMBER | DOC-REQ# | SUB | TERMS | FREIGHT TRMS | FOB | INSD | SALES |
|---|---|---|---|---|---|---|---|---|
| DEFFIN | 50420001 | M.MOORE | | NET 30 | PREPAID | DEST | | LL |

| LIN | OR'D | SHIP | BKOR | PRODUCT | UNIT | DESCRIPTION | UNIT $ | EXTENDED |
|---|---|---|---|---|---|---|---|---|
| 001 | 20000 | 20000 | | 30-13250 | PAIR | EYEWEAR TACTICAL CLEAR | 8.95 | 179000.00 |
| | | | | | | AEARO 13250 | | |
| | | | | | | ORIGINAL QTY ORD: 20000.00 | | |
| | | | | | | ORIGINAL BACK ORD: 20000.00 | | |
| | | | | | | BACK ORD REMAINING: .00 | | |
| 002 | 20000 | 20000 | | 30-13251 | PAIR | EYEWEAR TACTICAL BRONZE | 9.95 | 199000.00 |
| | | | | | | AEARO 13251 | | |
| | | | | | | ORIGINAL QTY ORD: 20000.00 | | |
| | | | | | | ORIGINAL BACK ORD: 20000.00 | | |
| | | | | | | BACK ORD REMAINING: .00 | | |

FILLS ITEMS ON ORDER # 006487
YOUR PO# 50420001

| | |
|---|---|
| SUB-TOTAL AMOUNT | 378000.00 |
| SALES TAX | |
| TOTAL AMOUNT | 378000.00 |

ANY DISCREPANCIES IN DELIVERY SHOULD BE HANDLED WITHIN 48HRS

EXHIBIT

PAGE 1 OF 1

# ORDER FOR SUPPLIES OR SERVICES

| 1. CONTRACT/PURCH ORDER/AGREEMENT NO. | 2. DELIVERY ORDER/CALL NO. | 3. DATE OF ORDER/CALL (YYYYMMMDD) | 4. REQUISITION/PURCH REQUEST NO. | 5. PRIORITY |
|---|---|---|---|---|
| | DABC-03-05-2005A | 2005FEB27 | 50420001 | |

**6. ISSUED BY** CODE

Purchasing and Contracting Office
General Services Administration
Fort Worth, Tx 76102

**7. ADMINISTERED BY** *(If other than 6)* CODE

**8. DELIVERY FOB**
- DESTINATION
- OTHER *(See Schedule if other)*

**9. CONTRACTOR** CODE. FACILITY

NAME AND ADDRESS
F & F / Security Safety Supply
1785 Commerical Drive
Port Allen, La. 70767

**10. DELIVER TO FOB POINT BY** *(Date)* (YYYYMMMDD) 2005FEB28

**11. X IF BUSINESS IS**
- SMALL
- SMALL DISADVANTAGED
- WOMEN-OWNED

**12. DISCOUNT TERMS** NET

**13. MAIL INVOICES TO THE ADDRESS IN BLOCK** See Block 15

**14. SHIP TO** CODE

SR HQ HHC ARCENT
OEF
CAMP ARIFJAN
KUWAIT KU

**15. PAYMENT WILL BE MADE BY** CODE

DEFENSE FINANCE AND ACCOUNTING OFFICE
8899 EAST 56TH STREET
INDIANAPOLIS IN 46249-2410

MARK ALL PACKAGES AND PAPERS WITH IDENTIFICATION NUMBERS IN BLOCKS 1 AND 2.

**16. TYPE OF ORDER**

| | | |
|---|---|---|
| DELIVERY/CALL | X | This delivery order/call is issued on another Government agency or in accordance with and subject to terms and conditions of above numbered contract. |
| PURCHASE | | Reference your ________ furnish the following on terms specified herein. ACCEPTANCE. THE CONTRACTOR HEREBY ACCEPTS THE OFFER REPRESENTED BY THE NUMBERED PURCHASE ORDER AS IT MAY PREVIOUSLY HAVE BEEN OR IS NOW MODIFIED, SUBJECT TO ALL OF THE TERMS AND CONDITIONS SET FORTH, AND AGREES TO PERFORM THE SAME. |

F&F Safety Supply Co — NAME OF CONTRACTOR
Mike Ferdinand (signature) — SIGNATURE
Mike Ferdinand — TYPED NAME AND TITLE
2/28/05 — DATE SIGNED (YYYYMMMDD)

☐ If this box is marked, supplier must sign Acceptance and return the following number of copies:

**17. ACCOUNTING AND APPROPRIATION DATA/LOCAL USE**

| 18. ITEM NO. | 19. SCHEDULE OF SUPPLIES/SERVICES | 20. QUANTITY ORDERED/ ACCEPTED* | 21. UNIT | 22. UNIT PRICE | 23. AMOUNT |
|---|---|---|---|---|---|
| 1 | PN: 13050 CLEAR TACTICAL SAFETY EYEWEAR | 20,000 | EA | 8.95 | 179,000.00 |
| 2 | PN: 13051 BRONZE TACTICAL SAFETY EYEWEAR | 20,000 | EA | 9.95 | 199,000.00 |

EXHIBIT B

*If quantity accepted by the Government is same as quantity ordered, indicate by X. If different, enter actual quantity accepted below quantity ordered and encircle.

**24. UNITED STATES OF AMERICA**
BY: MAXINE M. MOORE, GS -13 (signature: Maxine M Moore) — CONTRACTING/ORDERING OFFICER

**25. TOTAL** 378,000.00

**29. DIFFERENCES**

**26. QUANTITY IN COLUMN 20 HAS BEEN**
☐ INSPECTED ☐ RECEIVED ☐ ACCEPTED, AND CONFORMS TO THE CONTRACT EXCEPT AS NOTED

DATE — SIGNATURE OF AUTHORIZED GOVERNMENT REPRESENTATIVE

**27. SHIP. NO.**
- PARTIAL
- FINAL

**28. D.O. VOUCHER NO.**

**30. INITIALS**

**31. PAYMENT**
- COMPLETE
- PARTIAL
- FINAL

**32. PAID BY**

**33. AMOUNT VERIFIED CORRECT FOR**

**34. CHECK NUMBER**

**35. BILL OF LADING NO.**

**36. I CERTIFY THIS ACCOUNT IS CORRECT AND PROPER FOR PAYMENT.**

DATE — SIGNATURE AND TITLE OF CERTIFYING OFFICER

| 37. RECEIVED AT | 38. RECEIVED BY *(Print)* | 39. DATE RECEIVED (YYYYMMMDD) | 40. TOTAL CONTAINERS | 41. S/R ACCOUNT NUMBER | 42. S/R VOUCHER NO. |
|---|---|---|---|---|---|
| | | | | | |

# O[ ]R FOR SUPPLIES OR SERVICES

1

| Field | Value |
|---|---|
| 1. CONTRACT/PURCH ORDER/AGREEMENT NO. | DAKF55-05-S-0050 |
| 2. DELIVERY ORDER/CALL NO. | 0001 |
| 3. DATE OF ORDER/CALL (YYYYMMMDD) | 5042 |
| 4. REQUISITION/PURCH REQUEST NO. | W91PFK50420001 |
| 5. PRIORITY | 12 |
| 6. ISSUED BY — CODE W91PFK | SR HQ HHC ARCENT<br>OEF<br>CAMP ARIJAN<br>KUWAIT KU |
| 7. ADMINISTERED BY (If other than 6) — CODE | SEE BLOCK 6 |
| 8. DELIVERY FOB | [X] DESTINATION<br>[ ] OTHER (See Schedule if other) |
| 9. CONTRACTOR — CODE 9999999999 — FACILITY | NAME AND ADDRESS: F&F SUPPLY, INC.<br>1785 COMMERCIAL DRIVE<br>P O BOX 606<br>PORT ALLEN, IA 70767 |
| 10. DELIVER TO FOB POINT BY (Date) (YYYYMMMDD) | 0505 |
| 11. X IF BUSINESS IS | [X] SMALL<br>[ ] SMALL DISAD-VANTAGED<br>[ ] WOMEN-OWNED |
| 12. DISCOUNT TERMS | NET |
| 13. MAIL INVOICES TO THE ADDRESS IN BLOCK | SEE BLOCK 15 |
| 14. SHIP TO — CODE W91PFK | SR HQ HHC ARCENT<br>OEF<br>CAMP ARIJAN<br>KUWAIT KU |
| 15. PAYMENT WILL BE MADE BY — CODE | DEFENSE FINANCE AND ACCOUNTING OFFICE<br>8899 EAST 56TH STREET<br>INDIANAPOLIS IN 46249-2410 |

MARK ALL PACKAGES AND PAPERS WITH IDENTIFICATION NUMBERS IN BLOCKS 1 AND 2.

16. TYPE OF ORDER

- [ ] DELIVERY/CALL — This delivery order/call is issued on another Government agency or in accordance with and subject to terms and conditions of above numbered contract.
- [X] PURCHASE — Reference your [ ] furnish the following on terms specified herein.

ACCEPTANCE. THE CONTRACTOR HEREBY ACCEPTS THE OFFER REPRESENTED BY THE NUMBERED PURCHASE ORDER AS IT MAY PREVIOUSLY HAVE BEEN OR IS NOW MODIFIED, SUBJECT TO ALL OF THE TERMS AND CONDITIONS SET FORTH, AND AGREES TO PERFORM THE SAME.

NAME OF CONTRACTOR — SIGNATURE: Mike Fas[illegible] — TYPED NAME AND TITLE — DATE SIGNED (YYYYMMMDD)

[ ] If this box is marked, supplier must sign Acceptance and return the following number of

17. ACCOUNTING AND APPROPRIATION DATA/LOCAL USE

97X4930AQBA6DAC5RSM2B7022NL3LNIATS1116 Chargeable to APC: AQBA

| 18. ITEM NO. | 19. SCHEDULE OF SUPPLIES/SERVICES | 20. QUANTITY ORDERED/ ACCEPTED* | 21. UNIT | 22. UNIT PRICE | 23. AMOUNT |
|---|---|---|---|---|---|
| 13250 | PAIR EYEWEAR TACTICAL CLEAR | 40,000 | PR | 8.95 | 358,000.00 |

EXHIBIT C

*If quantity accepted by the Government is same as quantity ordered, indicate by X. If different, enter actual quantity accepted below quantity ordered and encircle.

24. UNITED STATES OF AMERICA
BY: Rachael Ford CW2
RACHAEL FORD CW2 ACCT — CONTRACTING/ORDERING

25. TOTAL: 358,000.00
29. DIFFERENCES:
30. INITIALS:

26. QUANTITY IN COLUMN 20 HAS BEEN
[ ] INSPECTED [X] RECEIVED [ ] ACCEPTED, AND CONFORMS TO THE CONTRACT EXCEPT AS NOTED

15 Sept 05 — Jason [illegible] SFC
DATE — SIGNATURE OF AUTHORIZED GOVERNMENT REPRESENTATIVE

27. SHIP. NO. [ ] PARTIAL [ ] FINAL
28. D.O. VOUCHER NO.
31. PAYMENT [ ] COMPLETE [ ] PARTIAL [ ] FINAL
32. PAID BY
33. AMOUNT VERIFIED CORRECT FOR
34. CHECK NUMBER
35. BILL OF LADING NO.

36. I CERTIFY THIS ACCOUNT IS CORRECT AND PROPER FOR PAYMENT.
DATE — SIGNATURE AND TITLE OF CERTIFYING OFFICER

| 37. RECEIVED AT | 38. RECEIVED BY (Print) | 39. DATE RECEIVED (YYYYMMMDD) | 40. TOTAL CON-TAINERS | 41. S/R ACCOUNT NUMBER | 42. S/R VOUCHER NO. |
|---|---|---|---|---|---|
| | | | | | |

DD FORM 1155, JAN 1998 — PREVIOUS EDITION MAY BE USED. — USAPA V1.00

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
F & F SUPPLY, INC.

**DEFENDANTS** UNITED STATES OF AMERICA DEPARTMENT OF DEFENSE and OLIVER MOORE, III

(b) County of Residence of First Listed Plaintiff: West Baton Rouge
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: ______
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number): David M. Cohn
The Cohn Law Firm, 10754 Linkwood Court
Baton Rouge, LA 70810 (225) 769-0858

Attorneys (If Known):

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Brief description of cause: UNPAID CONTRACT PRICE OF SUPPLIES FURNISHED TO OR DEPT. OF DEFENSE

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 378,000, plus other damages as alleged to be determined
CHECK YES only if demanded in complaint: JURY DEMAND: ☐ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ______ DOCKET NUMBER ______

DATE 1/8/07 SIGNATURE OF ATTORNEY OF RECORD [signature]

FOR OFFICE USE ONLY

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

#4699005355

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| F&F SUPPLY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-214C |
| | ) | (Senior Judge Bruggink) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

Declaration of Jason Fabre

I, Jason Fabre, declare as follows:

1. I am a Master Sergeant in the United States Army ("Army"). From approximately September 2005 through March 2006, I was stationed at Camp Arifjan, Kuwait, and was assigned to the 321st Theater Material Management Command ("TMMC"). During my time at Camp Arifjan, I served as the Non-Commissioned Officer in Charge ("NCOIC") of a High Priority Cell, which authorized the issue of supplies that bypassed the ordinary supply chain.

2. When supplies or materials came into Camp Arifjan, in most cases, they could be identified by several barcodes. One barcode was known as a Transportation Control Number ("TCN"). The other was known as a document number. These barcodes identified the sender, and the unit requesting the supplies or materials, and where they should be sent upon receipt at Camp Arifjan.

3. However, these barcodes might not be present if supplies or materials were sent as part of a "push." In a "push," the Army sent supplies or materials that

soldiers were known to need upon a regular basis, without a request from any unit.

4. Sometime around the summer of 2005, I received a telephone call from a warehouse at Camp Arifjan. The warehouse had received a shipment of protective eyewear from an Army depot in the United States that did not have barcodes identifying the group that had requested the eyewear, or where the eyewear should be sent upon receipt at Camp Arifjan.

5. I went to the warehouse to examine the shipment of eyewear. There were two pallets of eyewear that did not have any barcodes or information identifying which units had requested them, or where they should be sent. However, they have a shipping label stating that they should be sent to that warehouse at Camp Arifjan. The shipping label also identified Oliver Moore, 321st TMMC, as a contact.

6. The Army depot in the United States would not have reason to be concerned that the shipment did not have barcodes identifying the group that requested the eyewear, or precisely where the eyewear should be sent upon receipt at Camp Arifjan. It was sufficient that a shipping label stated that the shipment should be sent to the warehouse at Camp Arifjan.

7. At the time that the pallets of eyewear arrived, I had known Oliver Moore for approximately 12 years. I first met Mr. Moore when I graduated from the Army Training Institute, had served in the same reserve unit as Mr. Moore, and had worked

with him in the 321st TMMC.

8. I assumed that the eyewear had been sent as part of a "push." The reason that I assumed this is that the eyewear seemed to be safety glasses suitable for use in welding and other similar repair work, and a great deal of this type of work was being done by the Army at the time, and in the area that I worked in daily.

9. Therefore, I instructed the warehouse to enter the protective eyewear into the Army's system, and issue it to soldiers needing protective eyewear.

10. I signed a document to admit the two pallets of protective eyewear into the warehouse at Camp Arifjan, but did not sign a form DD 1155 for the eyewear.

11. Several months later, I was contacted by the U.S. Army Criminal Investigation Command ("CID") regarding the protective eyewear. I was asked to make an effort to locate the protective eyewear.

12. However, it was not possible to locate the vast majority of the protective eyewear, because it had already been distributed. For disposable items, such as the protective eyewear, soldiers or units needing the items could come to the warehouse and take them as needed, and were not required to sign them out. Therefore, it was not possible to trace where the protective eyewear had gone.

13. I learned from CID that Oliver Moore had apparently forged the signature of a contracting officer on an order for the protective eyewear.

14. I also learned that someone had forged my signature on a form DD 1155 for the eyewear. The forged signature spelled my last name incorrectly, and incorrectly identified me as a Sergeant First Class, rather than a Master Sergeant. As of September 2005, the date on the forged DD 1155, I was a Master Sergeant. I do not know who forged my signature on the form DD 1155. I have never discussed these matters with Oliver Moore.

15. As a Master Sergeant and NCOIC, I had no authority to take private property for the use of the United States or the United States Army. Nor did I intend to do so when I instructed the warehouse to enter the protective eyewear into the Army's system and distribute it. I believed that the protective eyewear had been ordered by an Army official with authority, and had been sent to Camp Arifjan as part of a "push."

16. I am not presently and have never been a contracting officer. I do not have and have never had a contracting warrant.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 21 day of July 2008.

MSG [signature]
Master Sergeant Jason Fabre

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| F&F SUPPLY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-214C |
| | ) | (Senior Judge Bruggink) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

Declaration of Jacqueline G. Moore

I, Jacqueline G. Moore, declare as follows:

1. I am a civilian employee of the United States Department of the Army ("Army"). I am a Supervisory Integration Systems Analyst at Redstone Arsenal, Alabama.

2. I was Oliver Moore's supervisor between approximately 31 December 2000 and 17 September 2006 while Mr. Moore was assigned as an Integration Systems Analyst to the 321st Theater Material Management Command ("TMMC"), US Army Materiel Command, in Baton Rouge, Louisiana. A duty description for the Integration Systems Analyst position that Mr. Moore occupied is attached to this declaration as Exhibit A.

3. Mr. Moore was not a contracting officer, and did not have a warrant. Mr. Moore did not have the authority to negotiate or enter into contracts on behalf of the Army. Mr. Moore did not negotiate or enter into contracts on behalf of the Army as part of his regular duties as an Integration Systems Analyst.

4. I was not aware that Mr. Moore had forged signatures on Orders for Supplies or Services for protective eyewear until I was contacted by either the Army Criminal Investigation Command ("CID") or Defense Criminal Investigative Services ("DCIS") regarding this matter.

5. I am not and have never been a warranted contracting officer. I never recommended that the Army accept the terms of any Order for Supplies or Services with signatures that Moore forged, nor would I have authority to do so.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 7th day of July 2008.

Jacqueline G. Moore

Exhibit A

# Position Description

**PD#:** BK139467

**Sequence#:** VARIES

**Replaces PD#:**

## INTEGRATION SYSTEMS ANALYST

**NH-0301-03**

**Servicing CPAC:** REDSTONE ARSENAL, AL

**Agency:** VARIES
**MACOM:** VARIES
**Command Code:** VARIES

**Region:** SOUTH CENTRAL

**Citation 1:** OPM PCS MISC ADMIN & PROGRAM SERIES, GS-301, JAN 79
**Citation 2:** OPM ADMIN ANALYSIS GEG, AUG 90
**Citation 3:** ACQUISITION DEMO POSITION REQUIREMENTS DOCUMENT
**PD Library PD:** NO
**COREDOC PD:** NO

**Classified By:** RONALD B. LEWIS, DCA
**Classified Date:** 01/16/2003

**FLSA:** EXEMPT

**Career Program:** 00

**Functional Code:** 00

**Competitive Area:** VARIES

**Competitive Level:** VARIES

**Bus Code:** VARIES

**PD Status:** VERIFIED

**Drug Test Required:** VARIES

**Financial Disclosure Required:** NO

**Requires Access to Firearms:** VARIES

**Position Sensitivity:** VARIES

**Emergency Essential:** [ ]

**DCIPS PD:** NO

**Acquisition Position:** YES
***

**Interdisciplinary:** NO

**Target Grade/FPL:** 03

**Career Ladder PD:** NO

Exhibit A

**Duties:**

Acquisition Workforce Demo Project Position Requirements Document

I. Organization information: US Army Aviation & Missile Command

II. Organization Goals: Conduct, perform, or manage basic and applied research and engineering, acquisition, integrated logistics materiel readiness management, advanced development and maintenance support functions for all assigned (aviation/missile weapons) systems/subsystems and associated equipment. Execute assigned missions in support of serviced population having centralized management responsibility for specific weapon systems or items. These support missions include procurement, production engineering, system engineering, product assurance, materiel management, system safety engineering, maintenance engineering, integrated logistics configuration management, security assistance management activities, resource management, and staff and base support activities, test, measurement, as required, in such areas as legal, financial, personnel, and installation management. Manage Department of the Army (DA) test, measurement, and diagnostic equipment (TMDE) acquisition, logistics, and support and support Army and DOD readiness through depot maintenance.

III. Position information:
INTEGRATION SYSTEMS ANALYST, NH-301-III

IV. Duties:

Serves as an Integration Systems Analyst responsible for ensuring that all assigned projects and initiatives are integrated and provides a cohesive approach to acquisition/logistics automated systems application and management within the shared Corps/Theater automated Data Processing Service Center (CTASC).

Leads projects for assigned functional areas and/or for automation program elements to ensure they incorporate objectives, are consistent with current DOD/DA/installation policy, and provide the most effective solution possible. Technically evaluates the adequacy of plans and supporting actions to ensure overall Army interface with the total automation program objectives of the entire defense community. Determines the course of action that needs to be taken to head off or correct problems and/or ensure effective, integrated implementation strategies. Ensures integration of all installation/DA/DOD business processes, programs, and initiatives for automated information systems requirements and ensures execution of same by program developers. Provides recommendations from which higher management can make decisions and directs appropriate actions. Investigates, coordinates, and resolves projects that require a decision at the action officer level due to interface among program elements, urgency of projects, impact of action on automation policy, or similar consequences.
25%

Monitors systems, recognizes trends and influencing factors creating delays or problems,

and develops, recommends, coordinates, or implements corrective action. Receives, reviews, and analyzes overall DOD/DA/installation policy, plans, and schedules and all contributory plans, programs, and schedules, and their relationships to planned or current automation initiatives.
75%

Performs other duties as assigned.

Other Work Requirements:
1. Employee must obtain and maintain a Secret clearance.

V. KNOWLEDGES, SKILLS AND ABILITIES (KSAs)

Ability to negotiate

Skill in technical writing

Skill in interpersonal relations

Ability to organize and lead study teams

Thorough knowledge of overall automation activities, regulations, and policies

Ability to plan, organize and direct study team work

Ability to gather, analyze, organize, and present facts and supporting analyses

Ability to work cooperatively as a member of a team

Knowledge of acquisition/logistics management functions, business and management functions, practices and automation activities and initiatives

Ability to identify problems and develop innovative solutions

Ability to provide guidance to customers

Ability to interpret and apply rules, regulations, and procedures

Knowledge of the organizational and functional responsibilities and operations of the employing organization

Ability to execute projects and/or studies within established financial and time constraints

Ability to develop and utilize appropriate data collection techniques

Ability to communicate orally and in writing

Ability to establish and maintain relationships with key individuals/groups outside immediate work unit

Ability to advise others

VI. Factors:

Factor: 1. - Problem Solving Level III.

Work is timely, efficient, and of acceptable quality. Completed work meets project/program objectives. Flexibility, adaptability, and decisiveness are exercised appropriately.

Independently defines, directs, or leads highly challenging projects/programs. Identifies and resolves highly complex problems not susceptible to treatment by accepted methods. Develops, integrates, and implements solutions to diverse, highly complex problems across multiple areas and disciplines. Anticipates problems, develops sound solutions and action plans to ensure program/mission accomplishment. Develops plans and techniques to fit new situations to improve overall program and policies. Establishes precedents in application of problem-solving techniques to enhance existing processes.

Factor: 2. - Teamwork/Cooperation Level III.

Work is timely, efficient, and of acceptable quality. Personal and organizational interactions exhibit and foster cooperation and teamwork. Flexibility, adaptability, and decisiveness are exercised appropriately.

Works with others to accomplish complex projects/programs. Applies innovative approaches to resolve unusual/difficult issues significantly impacting important policies or programs. Promotes and maintains environment for cooperation and teamwork. Leads and guides others in formulating and executing team plans. Expertise is sought by peers.

Factor: 3. - Customer Relations Level III.

Work is timely, efficient, and of acceptable quality. Personal and organizational interactions enhance customer relations and actively promote rapport with customers. Flexibility, adaptability, and decisiveness are exercised appropriately.

Guides and integrates functional efforts of individuals or teams in support of customer interaction. Seeks innovative approaches to satisfy customers. Establishes customer alliances, anticipates and fulfills customer needs, and translates customer needs to program/projects. Interacts independently and proactively with customers to identify and define complex/difficult problems and to develop and implement strategies or techniques for resolving problems (e.g., determining priorities and resolving conflict among customers' requirements).

Factor: 4. - Leadership/Supervision Level III.

Work is timely, efficient, and of acceptable quality. Leadership and/or supervision effectively promotes commitment to mission accomplishment. Flexibility, adaptability, and decisiveness are exercised appropriately.

Provides guidance to individuals/teams; resolves conflicts. Considered a functional/technical expert by others in the organization; is regularly sought out by others for advice and assistance. Defines, organizes, and assigns activities to accomplish project/program goals. Guides, motivates, and oversees the activities of individuals and teams with focus on project/program issues. Fosters individual/team development by mentoring. Pursues or creates training development programs for self and others.

Factor: 5. ? Communication Level III.

Work is timely, efficient, and of acceptable quality. Communications are clear concise, and at appropriate level. Flexibility, adaptability, and decisiveness are exercised appropriately.

Communicates project or program results to all levels, internally and externally. Reviews and approves, or is a major contributor to/lead author of, management reports or contractual documents for external distribution. Provides inputs to policies. Presents briefings to obtain consensus/approval.

Factor: 6. - Resource Management Level III.

Work is timely, efficient, and of acceptable quality. Resources are utilized effectively to accomplish mission. Flexibility, adaptability, and decisiveness

Plans and allocates resources to accomplish multiple project/programs. Identifies and optimizes resources to accomplish multiple project/program goals. Effectively accomplishes multiple project/program goals within established guidelines.

*** This is an Army Acquisition and Technology Workforce position.The employee must meet DoD 5000.52-M requirements applicable to the duties of the position.

**Evaluation:**

Pen and Ink Changes

On April 1, 2003, the SC CPOC received acquisition position data for this position. Last fall positions in LAISO were identified as acquisition positions. The SC CPOC was not notified; therefore, the position descriptions were not updated to reflect this change. Subsequently, the positions identified as acquisition were placed in the Department of Defense Civilian Acquisition Workforce Personnel Demonstration Project on March 23, 2003. LAISO informed the SC CPOC that these positions were acquisition positions and provided the position data. The position requirement document was updated on April 3,

2003.

Patricia R. Andrews
Human Resources Specialist (Classification)
SC CPOC, CFDA1

POSITION DESCRIPTION ATTACHMENT FOR ARMY ACQUISITION POSITIONS

ACQUISITION POSITION DATA

Position: Integration Systems Analyst, NH-301-03

Position Description Number: 139467 and Sequence Number: Various

CAREER LEVEL 2
JOB SITE N
CRITICAL POSITION 4
JOB SPECIALTY 1 9
JOB SPECIALTY 2 9
CAREER CATEGORY L
PROGRAM TYPE 9
SPECIAL ASSIGNMENT N/A

ACQUISITION STATEMENT

This position has been designated an Acquisition Workforce Position.

FLSA EVALUATION

PRD No. 139467
Title/Career Path/Series/Broad Band: Integration Systems Analyst, NH-301-03
Organization: Lead AMC Integration Support Office (LAISO)

0 Foreign Exemption

0 Availability Pay Exemption for certain Criminal Investigators

0 Customs Officer/Customs Pilot Exemption

0 Executive Exemption

0 Exercises appropriate supervisory responsibility (primary duty)
0 Customarily and regularly exercises independent judgment
0 80% test, if applicable

0 Professional Exemption

0 Professional work (primary duty)
0 Intellectual and varied work (more than dealing with procedures/precedents)
0 Discretion & independent judgment
0 80% test, if applicable

X Administrative Exemption

X Primary duty
0 Policy or
X Management or general business or supporting services or
0 Participation in the executive/administrative FUNCTIONS of a management official

X Nonmanual work test
X intellectual and significant (more than dealing with procedures/precedents), or
0 specialized & technical in nature requiring considerable training/experience

X Discretion & independent judgment

0 80% test, if applicable

Comments/Explanations (State which major duties/job functions meet exemption tests):

CONCLUSION: EXEMPT

Patricia R. Andrews
Human Resources Specialist (Classification)
SC CPOC, CFDA1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| F&F SUPPLY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-214C |
| | ) | (Senior Judge Bruggink) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

Declaration of Maxine Moore

I, Maxine Moore, declare as follows:

1. I am a civilian employee of the United States Department of the Army ("Army"). I am a Program Analyst at Fort McPherson, Georgia. I have been a Program Analyst since 1998. Prior to that time, my title was different, but my job duties have essentially been the same since 1993.

2. I am not presently and have never been a warranted contracting officer. I do not have and have never had a warrant.

3. I did not sign an Order for Supplies or Services for 40,000 pairs of tactical safety eyewear from F&F Safety Supply Company ("F& F Supply").

4. I know Oliver Moore through my employment with the Army. I did not authorize Mr. Moore to sign an Order for Supplies or Services for 40,000 pairs of tactical safety eyewear from F&F Safety Supply Company ("F& F Supply") on my behalf.

5. At some point, I was contacted by either the Army Criminal Investigation Command ("CID") or Defense Criminal Investigative Services ("DCIS") regarding an Order for Supplies or Services for 40,000 pairs of tactical safety eyewear from F& F Supply. I learned that my signature had been forged on this Order for Supplies or Services. Prior to being contacted by either CID or DCIS, I was not aware of the Order for Supplies or Services, or that my signature had been forged on the Order for Supplies or Services.

5. I was never contacted by F&F Supply regarding the Order for Supplies or Services or any protective eyewear. I have never received a request for payment from F&F Supply, and I have never received a certified claim from F&F Supply.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 21st day of July 2008.

Maxine Moore

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| F&F SUPPLY, INC., Plaintiff, v. THE UNITED STATES, Defendant. | ) ) ) ) ) ) ) ) ) | No. 08-214C (Senior Judge Bruggink) |

Declaration of Rachel Ford

I, Rachel Ford, declare as follows:

1. I am a Chief Warrant Officer Two in the United States Army ("Army"). Beginning in October 2005, I was stationed at Camp Arifjan, Kuwait.

2. I was not stationed at Camp Arifjan in September 2005. I was in the United States in September 2005.

3. I did not sign a form DD 1155 for protective eyewear in September 2005, or accept any protective eyewear on behalf of the Army in September 2005.

4. At some point, I was contacted by the U.S. Army Criminal Investigation Command ("CID") regarding a shipment of protective eyewear and a form DD 1155 for protective eyewear. I learned that my signature had been forged on a form DD 1155 dated September 2005. I do not know who forged my signature on the form DD 1155.

5. I never accepted the shipment of protective eyewear addressed in the

forged form DD 1155, and never signed a form DD 1155 for the protective eyewear.

6. I am not presently and have never been a warranted contracting officer. I do not have and have never had a contracting warrant.

7. I was never contacted by F&F Supply, Inc. ("F& F Supply") regarding the protective eyewear. I have never received a request for payment from F&F Supply, and I have never received a certified claim from F&F Supply.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 4th day of July 2008.

Chief Warrant Officer Two Rachel Ford